346 So.2d 196 (1977)
Leonard SCHEXNAYDER et ux.
v.
James R. CARPENTER et al.
No. 58920.
Supreme Court of Louisiana.
May 16, 1977.
*197 J. Winston Fontenot, Fontenot, Gautreaux & Andrus, Lafayette, for plaintiffs-applicants.
John M. Duhe, Jr., Caffery, Duhe, Oubre & Gibbens, New Iberia, for defendants-respondents.
DENNIS, Justice.
This is a personal injury suit arising out of an automobile accident. The cause was tried by a jury, which returned a verdict in favor of plaintiff, Dorothy M. Schexnayder, for $59,000, and in favor of her husband, plaintiff Leonard Schexnayder, for $4,040.60. The court of appeal affirmed the district court's judgment pursuant to the jury verdict, but reduced the amount awarded Mrs. Schexnayder to $15,000. Defendants conceded the issue of liability in the court of appeal. Schexnayder v. Carpenter, 338 So.2d 344 (La.App.3rd Cir. 1976). On application of the plaintiffs we granted a writ of certiorari to review the reduction in the jury award to Mrs. Schexnayder.
The accident occurred on October 21, 1973 in Iberia Parish, Louisiana. Mrs. Schexnayder, who was approximately 50 years old at the time, had set out to take her two year old grandson to a horse show. The child became ill-tempered, however, and she decided to return home. As she was attempting to make a left turn into a driveway off Louisiana Highway 14, her Pinto station wagon was struck in the side by a cane truck and trailer. The truck was owned by defendant Carpenter, and was being driven by his employee, who was attempting to overtake and pass the Schexnayder vehicle.
Before trial, on March 10, 1976, the parties stipulated that due to the accident it was necessary for Leonard Schexnayder to incur and pay the following: doctors' bills, $1,213; hospital bills, $75; other medical expenses, $75.45; automobile repair costs $810.42; and automobile rental expense, $1,293.18. It was stipulated that Mrs. Schexnayder lost $574 in wages because of the accident. These amounts, which comprise the $4,040.60 award to Mr. Schexnayder, are not in dispute.
Plaintiffs contend that the court of appeal reduced the award for damages to Mrs. Schexnayder in violation of Louisiana Civil Code article 1934(3) and the principles announced in Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974); Bitoun v. Landry, 302 So.2d 278 (La.1974); Revon v. American Guarantee & Liability Ins. Co., 296 So.2d 257 (La.1974); Spillers v. Montgomery Ward & Co., 294 So.2d 803 (La.1974); Fox v. State Farm Mutual Automobile Ins. Co., 288 So.2d 42 (La.1974); Walker v. Champion, 288 So.2d 44 (La. 1974); Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963).
Recently, in reviewing the reduction of a jury award in Coco v. Winston, 341 So.2d 332 (La.1977), we approved the statements of law contained in many of these decisions. In the Coco case we said:
"* * *[B]efore a Court of Appeal can disturb an award made by a trial court . . . the record must clearly reveal that the trier of fact abused its discretion in making its award. [citations omitted] Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. [citations omitted] *198 It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what is considers an appropriate award on the basis of the evidence." 341 So.2d at 335.
Since the jury does have, under the law, much discretion in fixing damages, the appropriate procedure for testing whether the jury abused its discretion is to determine whether the award can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the jury. See, Spillers V. Montgomery Ward & Co., supra. We will follow this procedure and attempt to set forth such an interpretation of the evidence.
The collision between the Pinto station wagon and the trailer-truck caused Mrs. Schexnayder's head and body to violently strike interior portions of her vehicle. She suffered a concussion and remained unconscious for several minutes. Upon reviving she remembered screaming with fright for herself, and out of fear that her grandchild, who had been on the rear seat, had been thrown from the vehicle. After being reassured that he was unharmed, she became alarmed that the accident would upset the child's mother who was pregnant at that time. Mrs. Schexnayder was bleeding from a laceration over the eye and had broken glass in her hair, which later necessitated its being closely cropped. Her face was badly bruised, and for several days she experienced dizziness, weakness, nausea, blurred vision and lapses of memory. She was taken from the accident site to the hospital where she was given first aid by a doctor in the emergency room and sent home to remain in bed for two days.
On the third day after the collision, October 24, 1973, Mrs. Schexnayder was able to visit her family physician, Dr. J. L. Comeaux. He testified she had a black eye and complained of pain in the neck region, and multiple aches and pains over her body. She was also very nervous and anxious about her pain and possible disability. The doctor detected tenderness and muscle spasm in her neck muscles and an elevation in her pulse rate. He prescribed muscle relaxants and tranquilizers. She was unable to return to work for approximately one month. Although she continued under Dr. Comeaux's care and he strengthened her dosage of tranquilizers, the symptoms persisted. The doctor suspected she was suffering from degenerative arthritis of the neck, which had been aggravated by the accident. After five to six months of treatment without significant improvement, however, Dr. Comeaux concluded that her problems were possibly psychogenic. He referred her to Dr. James Blackburn for psychiatric evaluation and treatment if indicated.
In order to rule out the possibility of damage to her nervous system, Dr. Blackburn referred Mrs. Schexnayder to Dr. Daniel C. Dunlap, a neurologist, for an examination. She was first seen by Dr. Dunlap on June 18, 1974. His impression was that she was having residual cervical pain from a concussion and neck injury. He prescribed muscle relaxant drugs and a course of physical therapy with Mr. Lindsey Dumond, a physiotherapist. Between June 25, 1974 and August 4, 1975, she received thirty-three physical therapy treatments consisting of motorized traction, heat treatments with hydrocollated packs, and ultra sound or deep heat applications. Also, under Mr. Dumond's direction, she bought and used a traction apparatus at home.
During this time she also visited Dr. Dunlap on five occasions. On August 8, 1974, he took X-rays of her neck region that showed narrowing of disc spaces, which he said was evidence of degenerative arthritis, that could have been aggravated by the accident. On September 16, 1974, Dr. Dunlap detected tightness of her neck muscles which he said was the same thing as muscle spasm. On January 6, 1975, he still detected tenderness in the back of her neck and prescribed a six day course of drugs for inflammation as well as a neck halter. Dr. Dunlap testified that if her neck condition continued to degenerate it is possible she would need a cervical disc fusion, which *199 would require myelography and surgery. These procedures would involve hospitalization for ten to fourteen days and expenses of approximately $3,000. However, Dr. Dunlap testified that she did not need a fusion at the time he last saw her on August 5, 1975.
At the time of the accident Mrs. Schexnayder was educational director of the Iberia Parish Headstart Program, and sometime before the date of the trial she was also made educational director in St. Martin Parish. Her job required a great deal of driving. In addition to motoring to work every day, it was necessary that she visit regularly the nine headstart centers scattered throughout the two parishes. She testified that when she returned to work her neck pains increased steadily and that she developed a fear of driving which grew continually. When asked if Mrs. Schexnayder's personality had altered after the accident, her husband responded affirmatively, stating there had been quite a change. He testified that she had become significantly more irritable than before, and that her fear of accidents had on occasion caused her to grab the steering wheel from him while she was riding as a passenger.
Dr. Blackburn, the psychiatrist, first examined Mrs. Schexnayder on May 10, 1974. He testified that when she began to drive after the accident the level of tension in her neck and shoulders increased. However, the doctor explained, because she was a determined individual she forced herself to resume work. The inner conflict between her desire to perform her duties and her fear of driving resulted in her being completely exhausted at the end of each day causing even more intense pain, as well as difficulty in sleeping. She had recurrent dreams of accidents in which she was being struck, crushed or killed by vehicles or huge objects. While awake she experienced increased anxiety and nervousness whenever she saw, read or heard of an accident. Using hypnosis, Dr. Blackburn caused Mrs. Schexnayder to relive the experience of two previous automobile mishaps in an attempt to eliminate some of the fear and anxiety she had accumulated. He found that in her subconscious there was a very vivid and frightening memory of these accidents as well as the one of October 21, 1973. Mrs. Schexnayder was resolute and, according to the psychiatrist, "too motivated" in her wish to overcome her problems, so that her treatment progressed more slowly than it would have otherwise. At the time of the trial on March 10, 1976, she needed further psychiatric treatment, he said, but she was "eighty, ninety per cent better now than she was initially." Dr. Blackburn testified that, in the absence of additional trauma, such as another accident, an operation on her neck, or something that produces a threat of disability, his patient would require three to six months of additional psychiatric care. He stated that she was still taking tranquilizers and muscle relaxants, as well as continuing to use her traction device at home. Dr. Blackburn recommended that she continue the medicine and traction for an indefinite period.
After construing the evidence from the reasonable point of view most favorable to the plaintiff, and according to the action of the trial court the much respect to which it is entitled, we conclude that the court of appeal was correct in deciding that the trier of fact clearly abused its discretion in making its award. A careful consideration of the record clearly reveals that the award was excessive, particularly since the evidence does not realistically support a finding of any permanent injury, disability, or extreme pain and suffering. We cannot agree, however, with the court of appeal that it interpreted the evidence in the light most favorable to plaintiff or that the award it fixed for her injuries is generous. Instead, it appears to us that the court of appeal based its award upon its opinion of the most reasonable version of the facts rather than upon the version most favorable to the plaintiff which is also reasonable.
Bearing in mind our own precepts that, after properly finding the trier of fact abused its discretion by making an excessive award, an appellate court may not simply *200 substitute its judgment of what it considers an appropriate award on the basis of the evidence, but may only lower the award to the highest point which is reasonably within the discretion afforded the trier of fact, Coco v. Winston Industries, Inc., supra, the decree of the court of appeal is amended by partially restoring the award made to the plaintiff, Dorothy M. Schexnayder, and rendering judgment in her favor against the defendants, in solido, in the sum of $30,000. In all other respects the judgment of the court of appeal is affirmed. The costs of the proceedings in this Court are assessed to the defendants-respondents.
AMENDED AND AFFIRMED.
SANDERS, C. J., dissents, being of the opinion that the judgment of the court of appeal is correct. See 338 So.2d 344.
MARCUS, J., dissents and will assign reasons.
MARCUS, Justice (dissenting).
La.Const. art. 5, § 10(B) (1974) defines the scope of appellate jurisdiction of the court of appeal as extending to law and "facts." However, this court has on repeated occasions stated that in the assessment of damages the court of appeal must give "much discretion" to the trier of fact. La.Civ.Code art. 1934(3). Recently, in Coco v. Winston Industries, 341 So.2d 332 (La. 1977), a majority of this court concluded after reviewing the record that the court of appeal erred in reducing a jury verdict for damages from the sum of $350,000 to the sum of $40,000. Accordingly, the award of the jury was reinstated. This conclusion was based on a finding that the jury had not abused its much discretion in finding that plaintiff was due the sum of $350,000 for his injuries.
In the instant case, the jury awarded plaintiff $59,000. Finding that the jury abused its discretion, the court of appeal reduced the award to $15,000 based upon its review of the record. The majority of this court, after reviewing the record, agreed with the court of appeal that the jury had abused its much discretion in fixing damages at $59,000; however, relying on language in Coco, the majority restored the award to $30,000 finding that the court of appeal erred in basing its award on its own appreciation of the evidence rather than lowering the award to the highest point which was reasonably within the discretion afforded to the trier of fact.
I disagree with this reasoning. In my view, the court of appeal has a constitutional obligation to review facts in the scope of its appellate jurisdiction. La.Const. art. 5, § 10(B) (1974). In the assessment of damages, La.Civ.Code art. 1934(3) and many decisions of this court require that much discretion must be afforded to the trier of fact. However, in my view, once the court of appeal finds that the trier of fact has abused its much discretion, the appellate court should then fix damages in an amount which in its opinion is supported by the record.
I agree with the majority in its finding that the court of appeal correctly concluded that the trier of fact abused its much discretion in awarding damages to Mrs. Schexnayder in the sum of $59,000. However, I disagree with the majority in holding that the court of appeal, once having found that the trier of fact abused its discretion in awarding damages, should have lowered the award only to the highest point which was reasonably within the discretion afforded to the trier of fact. Rather, I consider the court of appeal correctly reduced the award to an amount based upon its appreciation of the record. I find that the record fully supports the amount ($15,000) found by the court of appeal to adequately compensate plaintiff for her injuries. Accordingly, I respectfully dissent.