362 So.2d 1157 (1978)
Marvin TARVER, Plaintiff-Appellee,
v.
U-HAUL COMPANY, INC., et al., Defendants-Appellants.
No. 13578.
Court of Appeal of Louisiana, Second Circuit.
August 28, 1978.
*1158 Hudson, Potts & Bernstein by Ben R. Hanchey, Monroe, for Quennen Tomlinson & U-Haul Co., defendants-appellants.
Neblett, Fuhrer & Broussard by Robert B. Neblett, Jr., Alexandria, for Marvin Tarver, plaintiff-appellee.
Stafford, Randow, O'Neal & Smith by Larry A. Stewart, Alexandria, for Hanover Ins. Co., defendant-appellee.
Before BOLIN, MARVIN and JONES, JJ.
MARVIN, Judge.
Judgments below totaling $65,000 against defendants and third-party defendants arose out of a two-vehicle collision in which the plaintiff-driver of one vehicle was injured. Defendant U-Haul, which rented the truck to the defendant-driver, Tomlinson, provided $5,000 liability insurance coverage to Tomlinson. Plaintiff's uninsured motorist carrier, also a defendant and third-party plaintiff, provided $100,000 underinsured and uninsured motorist coverage to plaintiff.
Against the uninsured motorist carrier, judgment was for $60,000, subject to certain credits. Against Tomlinson, judgment in favor of the uninsured motorist carrier on its third-party subrogated demand was for the same amount. Against Tomlinson, judgment in favor of plaintiff was for $5,000. Our figures are rounded.
No appeal was taken by plaintiff's uninsured motorist carrier, but Tomlinson and his liability carrier have appealed, contending that the award for personal injury is excessive and that the lower court erred in failing to consider the poverty of Tomlinson in mitigation of the personal injury damages.
The 50-year-old plaintiff was permanently but partially disabled because of back trouble before the accident and had experienced five or six surgical procedures, three of which were within two years of the accident. The lower court found that plaintiff, who twice underwent surgery following the accident, first at the L-5 and later at the S-1 level of his back, had his disability increased by 15 percent and that he would be deprived of his enjoyment of a moderately active life because of the accident.
The $65,000 award is unquestionably within the lower court's discretion. Schexnayder v. Carpenter, 346 So.2d 196 (La. 1977), and we find no manifest error in the court's findings, amply detailed in its reasons for judgment.
The lower court heard evidence of Tomlinson's inability to respond in judgment because of his poverty but declined to mitigate the award because bankruptcy under federal law afforded the fairest, most convenient and most protective course for defendant and his judgment creditors, including plaintiff's uninsured motorist carrier.[1]
*1159 Whether or not this was error, admittedly, is a most "troublesome" question. Barnett v. Vanney, 360 So.2d 617 (La.App. 4th Cir. 1978). There the plaintiff, a guest passenger in a third automobile, complained that the lower court in a jury trial, admitted evidence of the second driver's inability to respond in judgment and of the second driver's $25,000 liability policy limits, instructed the jury regarding mitigation because of poverty, but refused to admit evidence of the first driver's $100,000 liability policy limits. The jury award was $35,000.
The court recognized that the award was "somewhat low," but found no abuse of discretion because there was evidence upon which the jury could have concluded that plaintiff's pre-existing back problem was only temporarily aggravated by the accident.
On the troublesome issue, the court held that the inability of a defendant to respond in judgment is a proper subject of consideration in assessing damages, citing numerous cases. Barnett, supra, 360 So.2d at page 620.[2] The court continued:
"The basis for such a ruling is generally concluded to be a matter of fairness so that a defendant, who has limited ability to respond in judgment, would not be confronted with such a large judgment as may destroy him financially. It is difficult to understand why such a concept has arisen in Louisiana law, because the damages allowed in tort cases are compensatory damages and not punitive damages. If damages are to be compensatory only, the damages should be fixed solely upon the consideration of the plaintiff's plight, not the defendant's financial ability to respond. Although our courts have adhered to the view of permitting evidence of limitations on ability to pay, yet they have refused to permit a plaintiff to introduce evidence to show the wealth or the ability of a defendant to pay. [Citations omitted] . . .
"Thus, such a plaintiff as here concerned cannot complain of introduction of inability to pay, yet he is prevented from showing that the other defendant is responsible for any reasonable judgment. At the same time, between the co-defendants, the inequities of this situation seem to us to be an unnecessary burden imposed, and could result in lack of fairness to the wealthier defendant. Nevertheless, the rule of evidence relating to the defendants' inability to respond in damages is too well entrenched for an appellate court to upset it. See, e. g., Davis v. Moore, supra."
Barnett also recognized that problems in applying the rule will invariably arise when some defendants are impecunious and others are not.[3] Compounding the problem here is the fact that the plaintiff's uninsured carrier, whether in a separate or a third-party action, is subrogated to and may assert against the tort-feasor the rights and claims of the tort-feasor's victim which it insured by the uninsured motorist provisions of its contract. See Hartford Accident & Indemnity Company v. Byles, 280 So.2d 624 (La.App. 3rd Cir. 1973).
The third-party demand is an incidental demand which may be asserted either in the principal action or separately, as a principal action. C.C.P. 1031, 1037. The mode of procedure generally in each case is the same. C.C.P. 1036. Defenses which would be available in a principal action are also *1160 available in the third-party action. C.C.P.. 1115.
In either mode of procedure, the demands of the subrogated plaintiff-subrogee cannot be legally superior to the demands of the subrogor and are subject to whatever mitigating circumstances may be available to the defendant. See Cox v. W. M. Heroman & Co., Inc., 298 So.2d 848 (La.1974); International Paper Co. v. Arkansas & Louisiana M. R. Co., 35 So.2d 769 (La.App. 2d Cir. 1948).
The uninsured motorist carrier contends that mitigation against its subrogated demand should not be allowed because if defendant's poverty is to be considered at all, then it should also be considered with respect to the plaintiff-insured's claim against the carrier under the policy. We cannot agree. The carrier's liability to plaintiff does not arise because of its relationship with the defendant-tort-feasor but on the basis of the plaintiff-victim-of-the-tort being its insured under the contract of insurance. The carrier's liability to its insured is not in tort, but is contractual, even though the amount of the liability is based upon personal injury damage. Gentry v. Pugh, 362 So.2d 1154 (La.App. 2d Cir. 1978).
As a subrogated third-party plaintiff, the uninsured motorist carrier must prove its case against the third-party defendant tort-feasor in tort, however, and is subject to defenses and mitigating circumstances which might be raised by the defendant. The defendant's limited ability to pay may affect the carrier's recovery from defendant but it does not affect the carrier's liability to its insured, the tort victim, since the carrier's liability is based on the contract. The nature of the uninsured motorist coverage is to protect the insured against motor vehicle personal injury damage caused by persons such as defendant here who are uninsured and the uninsured motorist carrier cannot, under these circumstances, complain about alleged inequities. Gentry v. Pugh, supra.
In Cole v. Sherrill, 7 So.2d 205 (La.App. 2d Cir. 1942), this court recognized that it has never been considered good policy to bankrupt one to pay another even though the award might not fully compensate the plaintiff for the loss or damage and that fair justice between both parties must be reached.
In reaching fair justicethe reasonable amount of damages to be awarded the carrierthe lower court should have taken into consideration defendant's poverty as a mitigating circumstance. See footnote two, supra. We find the lower court erred in relegating this defendant to the throes of bankruptcy.
The record shows that defendant is a 29-year-old married woodcutter, self-employed, with three children, who works as the weather permits earning no more than $100 weekly. He owes approximately $1,600 on his pulpwood truck and power saws and approximately $50 on a ten-year-old used car. These are his only assets. He had rented the U-Haul truck to use to peddle watermelons in a period of inclement weather. As a practical matter, a judgment of any amount may be the proverbial straw insofar as bankrupting a defendant in these circumstances. Considering all of the circumstances here presented, we deem an award of $2,250 will constitute fair justice to the litigants in the third-party action.
Judgment on the third-party demand appealed from is amended to reduce the amount awarded third-party plaintiff, Hanover Insurance Company, against third-party defendant, Quennen Tomlinson, to $2,250. Third-party plaintiff shall pay the cost of this appeal.
AS AMENDED, AFFIRMED.
NOTES
[1] The lower court stated:

"In conclusion, the Court notes it has declined to invoke the rule urged by counsel for Mr. Tomlinson to limit the award against him because of his limited ability to respond in judgment. This was done for the reason the Court is of the view he can seek the protection of the United States Bankruptcy Courts if and when any or all of this judgment is enforced against him. An outright limitation at this time by this Court might prejudice other creditors or favor them unjustly and it would deprive the Hanover Insurance Company of the opportunity to attempt to compromise the claim between it and him at a later date. Moreover, the Court notes there are other creditors involved in related litigation which must also be provided for eventually. The United States Courts are best suited to resolve the conflicting claims of multiple creditors asserted against an individual citizen."
[2] In Davis v. Moore, 353 So.2d 740 (La.App. 4th Cir. 1977), writ refused, that court a few months earlier squarely upheld as proper, this charge to a jury on the question [emphasis is ours]:

"`In arriving at a reasonable amount of damages to be awarded to the plaintiff, you should take into consideration the ability of the defendant to pay the amount of the judgment. You have been advised of the applicable limits of the automobile insurance policy involved in this litigation and you have also been told about the defendants' assets, liabilities, income and expenses. It is up to you to decide what a fair and just verdict would be.'
"This is a fair statement of the rule most recently reiterated by an appellate court in Domingue v. Continental Ins. Co., 348 So.2d 209 (La.App. 3rd Cir. 1977)."
[3] Barnett also said that in multiple defendant cases a fairer result is reached if no evidence of policy limits or of ability to pay is admitted.