HALL, Judge.
In this damage suit, the issues presented on appeal relate only to quantum. Plaintiff, Sammy Nugent, was injured in a two vehicle accident on August 2,1976. He was one of three occupants of a pickup truck owned and driven by Marvin Tarver, which was involved in a collision with a rented U-Haul truck driven by Quennen Tomlison. Each of the three occupants brought separate actions against Tomlison, Hanover Insurance Company, Tarver’s uninsured mo *782 torist insurer, and U-Haul Company, Inc., which provided $5,000/10,000 liability insurance to Tomlison. Plaintiff and the other passenger also named Tarver and Hanover as Tarver’s liability insurer, as defendants. Third party demands were filed. The suits were consolidated for trial.
Plaintiff’s case was held open for the taking of additional medical testimony after he had more fully recovered, as was the other passenger’s case. After this testimony was submitted, the trial judge found that the accident was caused solely by the negligence of Tomlison and that the plaintiff was entitled to $80,000.00 for his pain, suffering and disability. Judgment was rendered in favor of plaintiff against Hanover and Tomlison in solido for $77,437.35 and against Tomlison and U-Haul Company in solido for $2,562.65, the amount remaining on U-Haul’s insurance coverage. The trial court also rendered judgment in favor of Hanover against Tomlison on its third party demand for $77,437.35.
Hanover appeals the quantum awarded to plaintiff who answers the appeal contending the trial judge erred in refusing to award him damages for loss of earnings and loss of earning capacity. Tomlison appeals the refusal of the trial court to mitigate the judgments against him because of his poverty. We modify the judgments to award plaintiff an additional $15,000 for loss of earnings and to reduce the judgments against Tomlison to $2,250.
Hanover contends the amount of the award for general damages to plaintiff is excessive. Plaintiff had congenital spondy-lolisthesis which had never given him trouble. The trial court found that because of the accident this asymptomatic condition became symptomatic resulting in plaintiff undergoing a spinal fusion.
Plaintiff was hospitalized for three days following the accident. He was placed in traction and given muscle relaxers for pain in his right leg and lower back region. His condition was diagnosed as “acute lumbo-sacral strain.” After his discharge, plaintiff went to his family physician who admitted him to the hospital for another five or six days. He diagnosed plaintiff’s condition as congenital spondylolisthesis which had become symptomatic because of the accident. Plaintiff was referred to an orthopedic specialist, Dr. Henderon who suggested a spinal fusion. However, plaintiff was unable to pay for it at the time and did not undergo the operation.
Subsequently, plaintiff was referred to Dr. Banks who also recommended a spinal fusion, to which plaintiff submitted in April, 1977. Plaintiff spent the eight months between the accident and the fusion in varying degrees of pain. Dr. Banks testified the only reason to undergo spinal fusion for spondylolisthesis is to relieve pain. Plaintiff was hospitalized, underwent a myelogram and had a bilateral mass fusion from the L-4 vertebra to the sacrum. His postoperative treatment included wearing a stiff corset for approximately five months. He suffered gradually diminishing pain in his leg and lower back and in his hip where the bone chips for the fusion were removed. At the time of Dr. Bank’s deposition, March 31, 1978, plaintiff was still experiencing slight pain in his hip.
Dr. Banks testified plaintiff was suffering a 35% disability of the body as a whole at the time, which would probably improve, resulting in a residual disability of 20% of the body as a whole. He testified the operation was successful and the fusion had healed solidly, and that plaintiff had made good progress. He testified that it would take at least another six months for plaintiff to reach maximum improvement.
The trial court awarded plaintiff $80,-000.00 “for his disability resulting from this accident and for his pain and suffering.” While the award is on the high side, it is within the trial judge’s much discretion. Schexnayder v. Carpenter, 346 So.2d 196 (La.1977) and Tarver v. U-Haul Company, Inc., et al., 362 So.2d 1157 (La.App. 2d Cir. 1978).
Plaintiff answered the appeal contending the trial judge erred in not awarding him damages for his loss of earnings and for his loss of earning capacity. The *783 accident occurred on August 2, 1976 and plaintiff was expected to reach maximum improvement in early October of 1978. Thus, plaintiff was unable to work for over two years as a result of the accident.
Nugent was employed as a roughneck. Six weeks prior to the accident, while the rig was “stacked” for repairs, he suffered an accidental gunshot wound. He had fully recovered and was to return to work the day after the accident. His work history reveals fairly steady employment. He spent several years in each of a number of jobs. He had begun work as a roughneck several months before the accident. His tax returns for 1975 and 1976 indicate he made over $7,000 per year.
Plaintiff has proven he lost over two years’ wages as a result of the accident. This court believes that $15,000 will adequately compensate him for his lost wages. The judgment will be increased by this amount.
Plaintiff has not proven any permanent loss of earning capacity. At maximum improvement he will still have a 20% disability of the body as a whole. However, Dr. Banks’ testified plaintiff will be able to work and that it was possible he could return to his job as a roughneck. The only limitation on plaintiff’s ability to work is that he avoid compression type strains on the fusion. The evidence does not support a finding that plaintiff will not be able to engage in reasonable employment with an earning capacity comparable to that demonstrated prior to the accident. Therefore, the trial court’s failure to award damages for loss of future earning capacity was not erroneous.
Tomlison appeals the trial court’s refusal to mitigate the judgments against him because of his poverty. This issue was fully discussed in Tarver v. U-Haul Company, Inc., 362 So.2d 1157 (La.App. 2nd Cir. 1978) in which a $60,000 third party judgment against Tomlison in favor of Hanover was mitigated to $2,250. The remaining issue before this court is the extent to which this judgment should be mitigated in the instant case. Tomlison notes the court in Tarver found the added burden of the $2,250 judgment against him, as a practical matter, might render him bankrupt. He argues that since the Tarver judgment was mitigated to the maximum amount he could pay, this subsequent judgment should be mitigated to zero.
The judgments against Tomlison in this case should be mitigated for the reasons expressed in Tarver. The mitigated amount fixed in Tarver was not arrived at through any mathematically certain process. Whether that judgment has been paid or what Tomlison’s financial status was and is, subsequent to the consolidated trial, we do not know. The most reasonable approach is to mitigate this judgment to the same amount as in Tarver, or $2,250.
For the reasons assigned, the judgment in favor of plaintiff against Hanover is amended to increase the award by $15,000 to $92,437.35; the judgments in favor of plaintiff and Hanover against Tomlison are amended and reduced to $2,250; and, as modified, the judgments are affirmed. The costs of this appeal are assessed against Hanover.