BOUTALL, Judge.
This appeal arises from a judgment of the trial court awarding $180,000 in damages for personal injuries suffered in a rear end collision.
On April 21, 1978 in the early afternoon the plaintiff, Mrs. Buhlar O. Prats, was travelling in a southerly direction on Belle Chasse Highway when she stopped for a traffic signal. Shortly thereafter, her vehicle was struck from the rear by a car being driven by the defendant Mrs. Louise H. Moffett. The plaintiff suffered damages to her automobile as well as personal injuries.
Mrs. Prats filed suit against Mrs. Louise Moffett, James Moffett as owner of the car being driven by Mrs. Moffett, United Services Automobile Association and the Tiavel-ers Insurance Co. as the auto liability carriers of the Moffetts. Subsequently, plaintiff *1300 voluntarily dismissed her suit against Travelers. The remaining defendants answered and pleaded the affirmative defense of contributory negligence. Upon conclusion of the trial in this matter, the lower court awarded judgment in favor of Mrs. Prats in the amount of $180,000 against the United States Automobile Association. James and Louise Moffett were not named in the judgment.
On appeal the issue before us is the validity of the quantum award made by the trial court. United Services Automobile Assoc., as appellant contends that the quantum award to the plaintiff-appellee was excessive and should be reduced. Mrs. Prats, as appellee, in her answer to the appeal prays that the amount of quantum be increased from $180,000 to $300,000. Appellee also requests that Louise H. Moffett be cast in judgment as a party defendant and that the judgment be amended so as to the name United Services Automobile Association in judgment instead of United States Automobile Association.
I
The evidence reveals that after the accident occurred the plaintiff went to the home of her daughter were she resided. Mrs. Prats was very upset and not feeling well, so she went to bed for the rest of the day. The next morning she continued to feel poorly and was taken to the emergency room of Southern Baptist Hospital. The plaintiff complained of pain in her upper extremities including her back, neck and head, two black eyes and spots in front of her eyes. We will discuss briefly the injuries complained of by the plaintiff.

Neck and back injuries:

Three days after the accident on April 24, 1980, the plaintiff visited the office of Dr. Bernard L. Manale, an orthopedist. He diagnosed the plaintiff’s injuries as a severe cervical sprain with a possible ruptured disc. He prescribed a collar to be used by the plaintiff, as well as medication in the form of Pereodan, a narcotic, and Triavil, an anti-depressant, for the purpose of reducing the pain and muscle spasms experienced by the plaintiff in her upper extremities. X-rays revealed that Mrs. Prats had degenerative joint disease at several levels of her neck.
The plaintiff returned to Dr. Manale’s office one week later on May 1, 1978 complaining of continuous neck pains. Dr. Ma-nale described the range of motion in plaintiff’s neck as 15% on a scale of 100%. Over the course of the next 2V2 weeks the plaintiff’s condition failed to improve. Consequently she was admitted to St. Charles General Hospital on May 17, 1978 for treatment. At that time Dr. Manale made the following diagnosis in relation to the plaintiff’s injury to her upper extremities: 1.) acute cervical lumbar strain; 2.) degeneration joint disease, cervical and lumbar spine; and 3.) cervical radiculopathy, due to trauma. Items No. 1 and 3 were the proximate result of the accident and item No. 2 was rendered symptomatic as a result of the trauma experienced from the accident. This diagnosis was based on the performance of several tests including x-rays and a myelogram. The plaintiff also experienced a central nervous system disorder and symptoms of brain injury which will be discussed below. Upon discharge 12 days later the plaintiff was prescribed several medications. Due to the effect of these medications the plaintiff was required to severely curtail her physical activities including no driving or prolonged trips outside the house.
On June 19, 1978, or approximately 2 months after the accident, the plaintiff visited Dr. Manale’s office for the third time since the previous period of hospitalization. At that time, Dr. Manale described the range of motion in plaintiff’s neck as 50% which represented a 35% improvement. Subsequently, the plaintiff was hospitalized on two occasions for reasons unrelated to the cervical injuries. The plaintiff visited Dr. Manale once or twice a month over the next 3 months. On Sept. 6, 1978, or 4V2 months after the accident, Dr. Manale in an examination of the plaintiff, indicated that the range of motion in the plaintiff’s neck had improved to 75%.
*1301 The plaintiff visited Dr. Manale on October 16, 1978 or approximately 6 months after the accident. Dr. Manale examined Mrs. Prats and concluded that she had a normal range of motion in her neck. This conclusion is supported by the testimony of the defendant’s expert, Dr. James Williams. Dr. Manale further concluded that the plaintiff had a 15% permanent physical impairment of the body as a whole which was attributable to the cervical spondylosis reactivated by the trauma of the accident. Dr. Williams reached a different view finding that plaintiff had completely recovered from the accident. This latter conclusion is highly suspect as it was based on one 10 minute physical examination of the plaintiff and a few x-rays taken in December of 1978. No consideration was given to any of the previous hospital records or the x-rays compiled on her. Finally, Dr. Manale concluded that the plaintiff would have to be reexamined every 2 to 3 months for an indefinite period of time.

Brain Injury:

On the morning after the accident, the plaintiff complained of 2 black eyes and seeing black spots in front of her eyes. However, examination by Dr. Manale 3 days after the accident serves to dispute the plaintiff’s complaint of black eyes. He testified that, he did not see this on the plaintiff nor did he find any other physical evidence of a blow to her head as there were no bruises, abrasions or cuts. At first glance this would lead one to conclude that the plaintiff could not have suffered any damage to her brain. However, both Dr. Mary, the plaintiff’s treating internist and Dr. Dysart, the plaintiff’s treating neurologist, testified that an individual could suffer brain damage without having suffered the physical signs of a severe blow or without having lost consciousness. Dr. Mary testified that:
“You see, you have to ... to understand the acceleration factor. In other words a man can break a concrete block with his hand and not bruise his hand. The brain is a very soft tissue and the skull is very rigid. So a severe enough acceleration-deceleration motion can give someone damage which later causes symptoms, without being knocked or rendered unconscious and without having large abrasions or cuts.” P. 228.
These opinions are directly applicable to this case. Mrs. Prats experienced vomiting, difficulty in walking, spots in front of her eyes and temper tantrums during the period of time between the emergency room visit the day after the accident and three weeks later when she was first hospitalized. This is reflected by the testimony of Dr. Manale and the plaintiff’s daughter. Drs. Mary and Dysart indicated that the problems experienced by Mrs. Prats are characteristic of post traumatic encephalopathy, also known as post concussion syndrome. Mrs. Prats continued to exhibit these problems, as well as rambling speech and headaches, during the period of her first hospitalization from May 17 to 29,1978. This led Drs. Mary and Dysart to conclude that the plaintiff had suffered an injury to the brain or post traumatic encephalopathy. Various medications were prescribed to the plaintiff so as to improve her condition.
Following discharge the plaintiff continued to experience the symptoms of post concussion syndrome, including vomiting, nausea and ataxia. The plaintiff was hospitalized on July 10,1978 for a stomach disorder known as reflux esophagitis. Although Mrs. Prats had a previous history of this problem, Dr. Mary testified that this condition was caused by the accident. During this period of time, the plaintiff also received treatment for the problems she experienced in connection with her brain injury. It should be noted that the plaintiff was hospitalized for a third time, which was attributable to high blood pressure and hypertension. It is doubtful that this was accident related.
Up until the time of trial, or one year after the accident, the plaintiff continued to experience the various problems associated with post concussion syndrome, although to a lesser degree. Both Dr. Dysart and Dr. Mary opined that the plaintiff’s condition had improved somewhat. Dr. Dysart gave *1302 the following prognosis: “Over the last year, she’s continued to gradually improve slowly, with some periodic dips. She is apparently not functioning as she was before, but on the other hand, she’s allowed some degree of dysfunction by her age, simply her age. She apparently has not been able to build herself psychologically back with the same defense mechanisms to be comfortable to be going out to be with friends, so, I think things are quite guarded, and that she’ll need a lot of support. She could go ahead and continue at this rate, and come back. She may not quite make it back.”
Dr. Mary also made a prognosis. He stated: “I think she’s reached a plateau and she’ll probably continue at this level for a while. It’s possible she’ll improve.”
Finally, Dr. Dysart indicated that Mrs. Prats has a possibility of incurring epileptic seizures in the future. To control this situation as well as the other problems experienced by the plaintiff, she will continue to have to take several medications.
The defendant’s expert, Dr. William Martin, a neurologist, upon examination of the plaintiff concluded that she had no indication of brain damage. This expert’s testimony is discounted because of several factors: the examination conducted by Dr. Martin was very brief and occurred over 7 months after the accident; he testified that he did not have enough information to determine if the plaintiff had suffered a brain injury as a result of the accident; and the basis for his conclusion of no brain injury was not objective as the doctor did not review all of the medical records compiled on the plaintiff.
Besides considering the nature and severity of the injuries experienced by the plaintiff, we also have to examine the effect that these injuries have had on the lifestyle of Mrs. Prats. The evidence reveals that the plaintiff, a woman of 65 years of age, was in good health prior to the time of the accident. This is supported by the testimony of Dr. Lynn Hickman who examined the plaintiff one month prior to the accident. Mrs. Prats led a very active lifestyle prior to the accident. She worked part time in her nephew’s restaurant five or six days per week serving as a waitress, cook, and cashier at various times. The plaintiff travelled back and forth across the river three times a week to take her grandchildren to school. She played cards twice a month and took an occasional trip with her friends. Mrs. Prats resided with her daughter and participated in many of the daily family chores. Since the time of the accident the plaintiff has had to severely curtail her activities due to the hallucinations, ataxia, headaches, nausea experienced by her. It is unclear as to the exact effect of the medications taken by the plaintiff, but there is little doubt that it also has played a role in contributing to the plaintiff’s condition. She is no longer able to drive, play cards, or take trips. Furthermore, Mrs. Prats spends the majority of her waking hours in bed. Thus, there has been a drastic change in the plaintiff’s lifestyle as a result of the accident.
The judgment of the trial court was a lump sum award of $180,000. There was no division of general and special damages. In examining the record we find that the plaintiff has exhibited past medical and hospital expenses in the amount of $8,113.44. This does not include the expenses of the third period of hospitalization as the plaintiff has failed to prove that this was accident related. Estimated future medical expenses are $20,000. Total special damages amount to $28,113.44.
II
In considering the validity of the trial court’s award of quantum we are obligated to apply the reasoning expressed in Reck v. Stevens, 373 So.2d 498 (La.1979). It states:
“[3] Thus, the initial inquiry must always be directed at whether the trier court’s award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact’s ‘much discretion,’ La.Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facte discloses an abuse of discretion, that the award may on appellate review, for *1303 articulated reason, be considered either excessive, Carollo v. Wilson, 353 So.2d 249 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977), or insufficient, Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present case.”
In its reasons for judgment the trial court concluded that the plaintiff proved by a preponderance of the evidence that the physical and mental problems experienced by the plaintiff were caused by the accident. The trial court made the award of quantum based on the past and future medical and mental problems that have been and will be experienced by the plaintiff as well as the effect that these problems have had in severely altering the lifestyle of the plaintiff from one of much activity' to one of virtual inactivity.
In considering the nature and severity of the injuries experienced by the plaintiff, the past and future effect that these injuries have had and will have on the plaintiff’s way of life, the special damages, and the trial court’s reasons for judgment, we do not find that there has been an abuse of discretion by the trial court. Accordingly, we affirm the judgment awarding $180,-000 to the plaintiff. We amend the judgment to east United Services Automobile Association in judgment instead of United States Automobile Association.
The finding by the trial court that the injuries experienced by the plaintiff were caused by the accident establishes liability not only on the part of United Services Automobile Association as an insurer but also on the part of Louise H. Moffett as driver of the automobile which struck the plaintiff’s car. As previously indicated we do not find that the trial court abused its discretion in reaching this determination as to causation. Consequently the decree casting only United Services Automobile Association in judgment must be amended so as to also include Louise H. Moffett.

AMENDED AND AFFIRMED.

SCHOTT, J., concurs.