KING, Judge.
The sole issue presented by this appeal is the correctness of the trial court’s award of damages.
Plaintiff, August Guillory, (hereinafter Guillory) brought suit to recover damages, for medical expenses and personal injuries arising out of a motor vehicle collision, against defendants, J. Agee, R & J Trucking Co., Casualty Reciprocal Exchange, and Charles Edmund Fry (hereinafter defendants). By a separate suit August Guillory (hereinafter Guillory) brought suit for workmen’s compensation benefits, arising out of the same accident, against his employer, Michael Touchet, d/b/a Touchet Trucking Co., (hereinafter Touchet) and Touchet’s workmen’s compensation insurer, Insurance Company of North America (hereinafter I.N.A.). These suits were both consolidated for trial. After a trial on the merits judgment was rendered in favor of Guillory, for his damages for his medical expenses and personal injuries, and against the defendants, J. Agee, R & J Trucking Co., Casualty Reciprocal Exchange, and Charles Edmund Fry, in the sum of $4,798.68, for medical expenses, and in the sum of $5,000.00, for general damages, together with legal interest from date of judicial demand, until paid, and all costs of the proceedings. Judgment was also rendered in the consolidated workmen’s compensation suit in favor of Touchet and I.N.A. and against Guillory denying his claim for workmen’s compensation benefits. Guillory appeals from the judgment for damages rendered in the personal injury suit in his favor and against the defendants. We affirm.
*223 Since neither Guillory nor Touchet and I.N.A. have appealed the judgment of the district court in the consolidated workmen’s compensation suit it is now final insofar as it denies plaintiffs claims for workmen’s compensation benefits arising out of the same accident.
FACTS
The plaintiff, Guillory, was traveling southbound on U.S. Highway 167 between Opelousas and Lafayette on May 27, 1982, at about 1:45 P.M. He was driving a dump truck, owned by Touchet, and was accompanied by his girlfriend, Linda Castille. At that time an eighteen-wheel truck owned by defendants, J. Agee and R. & J Trucking Co., and driven by defendant, Charles E. Fry, struck the dump truck from the rear. The force of the impact did not damage the rear bumper of the dump truck but damaged the cast iron bell housing of the transmission of the dump truck. The eighteen-wheel truck, which left some 47 feet of skid marks, was damaged on the front part of the cab. The investigating officer, Trooper Darby D. Veronne, stated that after the accident Guillory reported to him that he was not injured. Guillory stated that he told Trooper Veronne that he felt a burning in his back but that “there wasn’t anything to it.” Linda Castille, who was riding in the dump truck, stated that she bumped her head upon impact but was not injured.
Guillory stated that he had performed manual labor all his working life and had never experienced back pain prior to this accident. This testimony was controverted by that of Linda Castille who stated that Guillory had previously injured his back in 1981 and that she ministered to his frequent complaints of pain by massaging his back.
Guillory testified that on the night of the accident he was unable to sleep because of a burning pain in his lower back. He further stated that, since the accident, he has suffered continual pain in his lower back, muscle spasms in his lower back and legs, and pain and numbness in both legs. He also testified that he cannot sit more than one hour without discomfort, cannot walk more than IV2 blocks without resting, and cannot perform heavy work.
Dr. Emile K. Ventre was the primary treating physician of plaintiff. He first examined Guillory on May 28, 1982 at which time the plaintiff reported a severe burning pain in his lower back, extending down to his left knee, as well as stiffness in his lower back. Dr. Ventre’s tests revealed tenderness upon manipulation of the lower lumbar area. He found Guillory’s neck was swollen and painful with a 70% loss of normal range of motion. X-rays revealed a two to three degree spondylolis-thesis (severe slipped disc in the lower lumbar area). Dr. Ventre concluded that the accident may have caused the disc to slip or the slipped disc may have been pre-existing and have been made symptomatic by the accident. Dr. Ventre prescribed rest, pain pills and muscle relaxants for Guillory.
On June 11, 1983, Dr. Ventre again examined Guillory and, having found no improvement, caused him to be hospitalized. A subsequent CAT scan revealed that Guil-lory had suffered a ruptured disc and that his condition was degenerating. The disc had slipped further and Guillory’s symptoms had not improved. Based upon his objective findings, Dr. Ventre concluded that Guillory was not exaggerating his complaints and that he was unfit for any manual labor. Dr. Ventre noted that this severe condition could not have occurred prior to the accident since the severe pain of a ruptured disc would have forced Guil-lory to abandon any form of manual labor and seek medical care.
Guillory was initially examined by Dr. Mayer, an orthopedic specialist, on June 14, 1982, at the request of Dr. Ventre. He found only a 20% restriction of normal movement in the lower lumbar spine area. He found that a lumbar muscle strain and contusion of the nerve root had aggravated a pre-existing spondylolisthesis (slipped disc), resulting in tenderness in the lower lumbar spine area and in the right gluteal area. His x-rays revealed a second degree *224 spondylolisthesis (moderately severe slipped disc). Dr. Mayer’s examinations on August 31, 1982 and November 8, 1982 revealed little change in Guillory’s condition. He concluded that Guillory must permanently abstain from any manual labor since any further injury would further aggravate the pre-existing spondylolisthesis.
The primary difference in the testimony of Dr. Mayer and Dr. Ventre is that Dr. Mayer stated that the aggravation of Guil-lory’s pre-existing spondylolisthesis could have occurred prior to the accident at issue. He stated that his conclusion that the aggravation of the spondylolisthesis was caused by the accident at issue was based upon Guillory’s statement that he felt no pain prior to this accident. However, he emphasized that he believed that Guillory had been truthful. Dr. Mayer further stated that in this type of back injury the victim may not experience immediate pain and that the onset of pain may be delayed up to 24 hours.
At the time of trial Guillory was incarcerated in the Louisiana State Penitentiary at Angola, after having pled guilty and being sentenced for the manslaughter of his wife.
The issue presented on appeal is whether the trial court erred in ruling that the accident caused a minimal aggravation of Guillory’s pre-existing congenital lower back deformity, and thus in awarding damages totaling $9,798.68 to Guillory.
Plaintiff, Guillory, argues that this award is insufficient.
Defendants argue that the ruling of the trial court was not clearly wrong, since the treating physician’s conclusion that the aggravation of the pre-existing condition was caused by the accident was based, at least in part, upon Guillory’s self-serving assertion to the effect that he had no back pain prior to the accident. Defendants urge that this assertion was contradicted by other evidence and on the basis of Guillory’s lack of credibility, which was assailed at the trial.
Our jurisprudence mandates that an appellate court should not alter a trial court’s finding of fact in the absence of manifest or clear error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973).
A review of the entire record, without going into detail, shows that Guillory’s credibility is certainly suspect. This lack of credibility could certainly have affected the conclusions of the physicians, whose diagnoses were based in part on Guillory’s assertions that he experienced no back pain prior to the accident. However, it is clear that Guillory’s credibility or lack thereof was not the only determinative factor in the trial court’s award of damages. Objective findings of the physicians clearly showed that the accident could have caused at least a minimal aggravation of Guillory’s spondylolisthesis.
Our review of the record in this case reveals not only a reasonable factual basis for the trial court’s conclusion that Guillory only suffered a minimal aggravation of a pre-existing congenital back condition but that there is no clear error in such finding.
This issue of the correctness of an award for damages was recently before this court in LeBlanc v. Montgomery Ward & Co., Inc., 420 So.2d 1320 (La.App. 3rd Cir.1982), wherein we held:
“ ‘The standard of appellate review vis-avis damage awards was set forth in Reck v. Stevens, 373 So.2d 498 (La.1979) as follows:
“Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to' the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive.
“With regard to appellate review of the much discretion of the trier of fact in the award of general damages, La.C.Civ.P. [sic] art. 1934(3) [now La.C.C. Art. 1999], we stated (after exhaustive review of the facts, and reversing the appellate court for disturbing (on the *225 basis of prior awards) the trier of fact’s award) in Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127, 132 (1967) (Italics ours):’
“ ‘The law is plain and means what it says, and it is the duty of all appellate courts to follow it. Under this rule the amount of damages assessed by the judge or jury should not be disturbed unless the appellate court’s examination of the facts reveals a clear abuse of the discretion vested in the trial court.... The facts and circumstances in the other neck injury awards, relied upon by respondent as showing that this award was all out of proportion with the previous awards for similar injuries, causes them to have little or no relevancy for purposes of demonstrating the excessiveness of this award.’
“ ‘Thus, the initial inquiry must always be directed at whether the trier court’s award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact’s “much” ⅜ * * discretion,’ La.Civ.C. art. 1934(3) [now La.C.C. Art. 1999] in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, Carollo v. Wilson, 353 So.2d 249 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977), or insufficient, Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present ease.
“ ‘In the initial determination of exces-siveness or insufficiency, an examination of prior awards has a limited function — if indeed the facts and circumstances of the prior awards are closely similar to the present. The prior awards may serve as an aid in this determination only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, but the mass of them) for (truly) “similar” injuries, see Coco v. Winston Industries, Inc. at 341 So.2d [332] 334 (La.1977).’ ” (Footnote omitted.) Le-Blanc v. Montgomery Ward & Co., Inc., supra, at pages 1321-1322.
Thus, in reviewing the trial judge’s award of damages in this case one cannot simply resort to seemingly similar cases for the reason that the damages in each particular case must be determined on the basis of facts and circumstances peculiar to that particular case. Our review of the record does not indicate that the trial judge abused his “much discretion” in the damage award made in this case. LSA-C.C. Art. 1999.
For the reasons assigned, the judgment is affirmed at plaintiff-appellant’s costs.
AFFIRMED.