DOUCET, Judge.
Plaintiffs on this appeal, Fred Frederick and Elizabeth Smith Frederick, assert that the amount of general damages awarded by the jury is manifestly inadequate. Defendant, Louisiana Farm Bureau Casualty Insurance Company, maintains that the jury did not abuse its discretion in determining the award. Defendants admitted liability; therefore, liability is not an issue before us on appeal. After trial, the jury awarded $32,500 in general damages to Mrs. Frederick. We find no abuse of discretion by the jury and affirm its award.
The plaintiffs filed this suit against Ralph Hardy and the Louisiana Farm Bureau Casualty Insurance Company for damages arising from an automobile accident which occurred on August 11,1984 on Louisiana Highway 165 near Iowa, in Jefferson Davis Parish. Fred Frederick was driving an automobile south on Highway 165, and *140 his wife, Elizabeth Smith Frederick, was a passenger in the right front seat. A pickup truck being driven north on the same highway by Myron Hardy, minor son of Ralph Hardy, abruptly made a left turn into a private drive directly in front of the Frederick vehicle, causing an accident in which the Fredericks were injured.
At trial, Louisiana Farm Bureau stipulated to liability and to coverage in favor of Ralph Hardy, and the lawsuit was dismissed against Ralph Hardy personally, and proceeded to be tried against Louisiana Farm Bureau on the issue of quantum only.
The jury rendered a judgment in favor of the plaintiffs. The judgment was read and signed in Chambers on April 15, 1987. Since that time, all judgments have been satisfied except the judgment in favor of Mrs. Frederick.
The jury awarded Mrs. Frederick $14,-120.00 in special damages which included $12,820.00 in outstanding medical bills, $1,000.00 for travel expenses, and $300.00 for future medical expenses. The jury also awarded her $32,500.00 for general damages. From this award of general damages, the plaintiffs perfected this appeal, asserting that these damages are manifestly inadequate.
Plaintiffs assert in their specification of error that the jury award of general damages to Mrs. Frederick was so low and contrary to the evidence that it constituted an abuse of discretion. We disagree.
LSA-C.C. art. 2324.1 provides:
“In assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury.”
The standard to be applied by a Court of Appeal in reviewing a damage award of a trial court is clearly set out in the case of Taylor v. Dupree, 484 So.2d 986 (La.App. 3rd Cir.1986) writ denied 488 So.2d 201, in which this court stated:
“It is well established that before a reviewing court can disturb an award made by a trial court, the record must clearly show that the trier of fact abused its discretion in making its award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Reck v. Stevens, 373 So.2d 498 (La.1979). In Coco, the Supreme Court stated:
“Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. [Citations omitted.] It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence. ”
Since the-jury does have great discretion in setting damages, the proper test for whether a quantum award can be upheld revolves around a determination of whether the facts and circumstances peculiar to this case and this individual, interpreted in a light most favorable to the plaintiff, reasonably support the jury’s decision. Schexnayder v. Carpenter, 346 So.2d 196 (La.1977); Reck, supra.”
Applying these principles to the facts of the present case, we find no abuse of discretion by the jury in its award of $32,-500.00 in general damages for injuries sustained by Mrs. Frederick as a result of the automobile accident in question.
The accident occurred early in the evening on August 11, 1984. Mrs. Frederick was unconscious for several minutes after the accident and was taken to the hospital by ambulance, arriving at 6:30 p.m. that evening. She was hospitalized overnight, released from the hospital the next morning, and was back at her home by 11:00 a.m.
Dr. Paul Comeaux, the plaintiffs’ family physician, examined Mrs. Frederick at the hospital on August 12, 1984 and diagnosed her as having multiple contusions, cervical strain, mild concussion, amnesia regarding the accident, and some muscle spasm at the *141 C6-7 level of the spine. He also examined her in his office on August 13, 1984 and found that she “was feeling a lot better.” He saw her again on August 15, 1984 and stated that she complained of memory loss for the accident itself, some dizziness, some soreness of the right neck, headaches, and some nausea from prescribed medication. He further stated that, at that time, he did not expect her tp have any permanent disability.
Mrs. Frederick was again hospitalized from August 17, 1984 through August 19, 1984. A CAT scan was done on her at that time and she was examined by Dr. John Raggio, a neurosurgeon. He stated by way of deposition that her neurological examination and her CAT scan were both normal, and that he thought there was a possibility of a cerebral contusion. He saw her again on August 27, 1984 and found her neurological exam on that day to be normal. She was seen again on September 7, 1984 and her neurological exam was again found to be normal. On that date Dr. Raggio diagnosed her as having a cerebral contusion, or bruising of the brain. He stated that Mrs. Frederick also complained of generalized aches and pains. At that time Dr. Raggio didn’t think she would suffer any residual permanent disability.
A Myelogram was performed on Mrs. Frederick on October 7, 1986, and Dr. Rag-gio reviewed the film of the Myelogram and felt it was within the normal range for a woman of that age (35 years old). He also stated that in his experience, cervical surgery was “90 to 95 percent effective at relieving symptoms.”
Dr. Stanley Kordisch, Mrs. Frederick’s obstetrician and gynecologist, testified by way of deposition that Mrs. Frederick had been his patient since April 28, 1983. He examined her on October 17, 1984 (about two months after the accident), and at that time she complained of some occasional stiffness in her neck and some decreased short term memory as a result of the accident. He referred her to Dr. Shamieh, a neurologist.
Dr. Kordisch further testified that Mrs. Frederick became pregnant in January of 1985 and that he examined her many times throughout the pregnancy until the birth of her child in September of 1985. He stated that he had no record or recollection of her complaining about neck pain during the entire term of her pregnancy.
The deposition of Dr. Fayez Shamieh, a neurologist, was read into the record. Dr. Shamieh first saw Mrs. Frederick on November 8, 1984. He performed a neurological examination of her which he stated did not reveal anything significent except “some tenderness over the neck muscles and discomfort with movement.” Dr. Shamieh prescribed medication for Mrs. Frederick and when he saw her again on November 27, 1984 she reported that she felt better while taking the medication. Dr. Shamieh stated that on December 11, 1984 she told him “that she was feeling much better”, but was “still having occasional pain in the right side of the neck and headache, but it was not nearly as bad as it used to be.” He further stated that during Mrs. Frederick’s last visit for treatment of her neck on January 14, 1985 (about five months after the accident), she complained only that she had “occasional stiffness, especially when she gets up in the morning, in the neck,....”
After this visit to Dr. Shamieh on January 14, 1985, Mrs. Frederick received no medical treatment for her neck until May 14, 1986, except for chiropractic treatment beginning on November 27, 1985, and lasting until shortly before her surgery on October 14, 1986.
The deposition of Dr. Gerald Louviere, a radiologist, was read into the record. He performed a cervical myelogram on Mrs. Frederick on October 7,1986 at the request of Dr. Dale Bernauer. He found that the myelogram revealed a posterior protrusion of the disc at the C6-7 level.
The video deposition of Dr. Norman P. Morin, an orthopedic surgeon, was shown at trial. Dr. Morin performed a cervical examination of Mrs. Frederick on July 7, 1986 (almost two years after the accident). He stated that he found nothing physically wrong with her. He further stated that he doubted her credibility with respect to her *142 complaints of pain, and that he thought that she exaggerated those complaints.
Dr. Thomas Miller, a chiropractor and friend of the Frederick family, treated Mrs. Frederick from August 29, 1984 to November 5, 1984. He testified that she suffered from muscle spasms in her neck and that she made some progress during treatment. At her last visit he referred her to an orthopedist or a neurologist. After that time, Dr. Miller only saw her on a social basis on several occasions after she became pregnant in January of 1985. He stated that on those occasions she had “neck complaints”.
Mrs. Frederick gave birth in the latter part of September of 1985, but did not return to Dr. Miller for chiropractic treatment for neck pain until November 27, 1985. He treated her from that time until October 1, 1986. He found that her neck was in about the same condition as it had been before her pregnancy. He stated that she told him she had neck pain “off and on”. He further stated that he could have treated her for neck pain while she was pregnant if she had requested treatment. Dr. Miller also stated that he had seen Mrs. Frederick since her surgery and she had told him “she was improving quite a bit.”
Dr. Dale Bernauer, an orthopedic surgeon, testified that he first saw Mrs. Frederick on January 21, 1985 for treatment of carpal tunnel syndrome, a condition unrelated to the accident. He also saw her on February 13, 1985. He testified that Mrs. Frederick did not mention any neck pain during either of these two visits.
Mrs. Frederick did not return to Dr. Ber-nauer until May 14, 1986 (about five months after the birth of her child). Dr. Bernauer stated that' at that time she complained of pain and stiffness in her neck. She began physical therapy treatments that day, which continued through August 15, 1986, for a total of 55 visits.
On October 7, 1987 a myelogram was performed on Mrs. Frederick and Dr. Bern-hauer determined that surgery was necessary. Mrs. Frederick was hospitalized on October 13, 1986, and an anterior cervical discectomy of the C6-7 disc was performed on October 14. Dr. Bernauer stated that the surgery was successful and there were no complications.
Mrs. Frederick was released from the hospital on October 17, 1986. Dr. Ber-nauer stated that he saw her on October 29 and she “had done very well”, and that she said “the pain was much less than it had been before the surgery.” He found that she had the usual post-surgical pain.
Dr. Bernauer saw Mrs. Frederick on November 12, 1986 and found she was “again doing well” and had “some post-operative pain.” On December 10, 1986, “she was complaining of some pain, but mostly doing fairly well.” At a visit on January 7,1987, Dr. Bernauer stated that “mainly she was better than before surgery.” At an examination on February 4, 1987 he found “a little bit of permanent problem” with her C7 nerve root.
Dr. Bernauer assessed Mrs. Frederick as having a “twenty-five percent permanent partial disability to her neck.” He stated that he didn’t think she should lift over 30 pounds or do any stooping, crawling, or climbing, but that “she can work within these restrictions.” It was his opinion that driving a tractor would be “contraindicated” for her on rough terrain. He stated that she could do normal housework and that her future medical bills would amount to about $300.00. He further stated that her condition could improve even more in the future.
Dr. Bernauer stated that a woman suffering from Mrs. Frederick’s condition pri- or to her operation would be expected to experience more severe pain during pregnancy due to water retention, and that he would expect her to have had complaints to her obstetrician during that period.
Several of Mrs. Frederick’s friends and relatives testified at trial. They all testified that she had complained of neck pain during her pregnancy. They also testified that since her surgery (about four months prior to trial), her condition had improved, she was complaining less, and her activity level had increased.
*143 Mrs. Frederick’s husband testified that since her surgery she had improved a great deal and that things were getting better every day.
Mrs. Frederick testified that she had continued to have neck pain during her pregnancy. She stated that the reason she did not take any medication or receive any treatment for this pain during her pregnancy was out of fear of harming her unborn child. She further stated that she felt good immediately after surgery and that her condition had improved, and was continuing to improve, since the surgery.
Mrs. Frederick testified that she had planned on learning to drive a tractor prior to her accident in order to help her husband on the farm, but she had never driven a tractor before. She stated that she lifts and carries her two younger children “just like any other mother.” She also stated that between the accident and the surgery she was able to do some of her housework and by the time of the trial she could do almost all of her housework, as well as prepare meals, clean up after meals, and do the family shopping. She further testified that after surgery she is feeling “a whole lot better,” and that she was “feeling better every day.”
As was stated by this court in Roy v. Commercial Union Insurance Company, 486 So.2d 251 (La.App. 3rd Cir.1986):
“Evaluation of a personal injury award is extremely difficult. The demeanor of the witnesses, the unbelievability of the injured party’s experience, and the medical evidence presented are the essentials in a juror’s resolution of quantum.”
During the three days of the trial of this case, the jury was afforded the opportunity to assess the demeanor of the witnesses, including that of the plaintiff, and to review all of the medical testimony presented. Also, the jury was afforded an opportunity to evaluate Mrs. Frederick’s present physical condition, with the aid of all the medical testimony, for those three days. The jury made its own evaluation based on the evidence. The jury’s finding cannot be disturbed on appeal in the absence of manifest error. Toups v. T.G. & Y. Stores, 488 So.2d 296 (La.App. 3rd Cir.1986).
Given the facts and circumstances of this case and the record as a whole, we cannot say the jury abused its great discretion in awarding Mrs. Frederick $32,500.00 in general damages and will not modify this jury finding on appeal.
For the above and foregoing reasons the judgment of the trial court is affirmed with the costs of the appeal to be paid by the plaintiffs-appellants.
AFFIRMED.