558 So.2d 1360 (1990)
June ROSELL
v.
ESCO d/b/a Jolly Elevator Corporation and Raftery Maintenance Services.
No. 88-CA-0661.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1990.
*1362 Clyde A. Ramirez, Ivan David Warner, III, Patricia D. Miskewicz, Ramirez, Warner and Miskewicz, New Orleans, for plaintiff/appellee June Rosell.
John E. McAuliffe, Jr., Bienvenu, Foster, Ryan and O'Bannon, New Orleans, for defendant/appellant Raftery Elevator Corp.
Before LOBRANO, ARMSTRONG and BECKER, JJ.
BECKER, Judge.
This appeal has been remanded to this Court pursuant to the Louisiana Supreme Court's decision in Rosell v. ESCO, d/b/a Jolly Elevator Corp., et al, 549 So.2d 840 (1989), for a review of the trial court's findings on the issues of "contributory negligence, comparative fault and quantum." The defendant, Raftery Maintenance Services, had originally appealed the trial court's judgment in favor of the plaintiff, finding Raftery liable for plaintiff's alleged injuries.
Another panel of this Court reversed the trial court's finding of liability on Raftery, stating that the plaintiff failed to meet her burden of proof.[1] The Supreme Court granted writs from the appellate court's ruling, and reversed this Court's judgment, reinstating the trial court's determination of liability.
The plaintiff had filed suit for injuries she allegedly incurred when an elevator door hit her in the head. Plaintiff sustained this injury while in the scope of her employment with Colonial Bank. Included as defendants were ESCO, the manufacturer of the elevator, and Raftery Maintenance Services, the company which provided maintenance on the elevator in question. ESCO was dismissed from the litigation by a summary judgment.
After a trial on the merits, the jury found plaintiff, June Rosell, thirty percent at fault; defendant, Raftery Maintenance Services, seventy percent negligent; and awarded plaintiff $500,000.00 in general damages. Upon motion of the plaintiff, the trial judge made the jury's verdict the judgment of the court, rendering defendant, Raftery Maintenance Services, liable to plaintiff for damages in the amount of $350,000.00 (the award of $500,000.00 minus plaintiff's thirty percent apportionment of fault).
Defendant, Raftery Maintenance Services, appealed the judgment of the trial court. As stated above, another panel of this Court reversed the trial court's findings of liability on the part of Raftery. The Louisiana Supreme Court reversed this Court's decision, reinstating the trial court's judgment, and remanding the matter for a review on the issues of "contributory negligence, comparative fault and quantum."
The accident sued upon allegedly occurred as plaintiff was exiting the elevator at her place of employment. Plaintiff contends that as she was walking out of the elevator, the elevator doors closed too quickly, hitting her in the face, causing plaintiff to fall backwards and strike her head on the elevator's rear wall. The trial court found that Raftery failed to reasonably *1363 maintain the elevators in a safe condition. Several employees of Colonial Bank testified at trial that the elevator doors kept closing too quickly, and that they had seen Raftery's employees at the bank on numerous occasions working on the elevator in question.
Plaintiff testified also that on other occasions when she used the elevator she noticed that the timing of the elevator doors was too fast. According to her testimony, the elevator door would close after one person had the opportunity to exit the elevator.
The jury found that the plaintiff was also negligent in the causation of the accident. A review of the trial transcript supports the jury's finding. The record revealed that the bank employees had a general knowledge that the elevator doors were not working properly. Further, there is evidence that the plaintiff was not attentive to her surroundings as she exited the elevator. The testimony of Dawn Hirstius, who was in the elevator with the plaintiff, indicates that the plaintiff and Ms. Hirstius were involved in a conversation as they exited the elevator.
It is well settled that an appellate court may not set aside a trier of fact's findings in the absence of manifest error. Further, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Arceneaux v. Dominque, 365 So.2d 1330, 1333 (La.1978); Canter v. Koehring, 283 So.2d 716, 724 (La.1973).
We can not say that the jury's finding of negligence on the part of the plaintiff was manifestly erroneous. While plaintiff refutes Ms. Hirstius' testimony, this conflict of testimony was resolved against the plaintiff by the jury. It is the jury's role, in assessing credibility, to determine which witnesses to believe. Further, it is settled that a jury need not accept a witness's entire testimony as true; the jury is entitled to accept those parts of a witness's testimony which it deems to be true.
Neither do we find error in the jury's apportionment of fault. Findings as to fault are factual and should be upheld on appellate review unless determined to be manifestly erroneous or clearly wrong. Garrett v. Celino, 489 So.2d 335 (La.App. 4th Cir.1986). In apportioning fault, the trier of fact must consider "both the nature of the conduct of each party at fault and the extent of the causal relationship between the conduct and the damages." Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967, 964 (La.1985).
To assist in the assessment of the nature of the conduct of the parties, the Louisiana Supreme Court has recognized the following considerations:
(1) Whether the conduct resulted from inadvertence or involved an awareness of the danger;
(2) how great a risk was created by the conduct;
(3) the significance of what was sought by the conduct;
(4) the capacities of the actor, whether superior or inferior; and
(5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by the concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties. Watson, supra at 974.
In its review, the Supreme Court found that "the jury evidently concluded that the accident had been caused by the negligent or improper maintenance of the elevator by Raftery's service personnel." This inference undoubtedly was based on the jury's decision to credit the testimony of the plaintiff's witnesses that the elevator doors operated erratically and too rapidly at times prior to the accident, and that Raftery's employees responded to the complaints *1364 but always failed to correct the problem. From these facts the jury apparently inferred that the elevator doors were in a defective condition that should have been discovered and remedied by a reasonable person acting as a professional elevator maintenance firm. Rosell v. ESCO, 549 So.2d 840 (1989).
Therefore, we conclude that the defendant had knowledge of the condition which was a cause-in-fact of the accident. The risk created by such a defective condition is easily recognizable as several employees testified that they had received bruises on their arms from the elevator doors striking them. Further, Raftery was in a superior position to the plaintiff as it was in Raftery's control to correct the defective condition. Raftery's failure to correct the condition is clearly a substantial cause of plaintiff's injuries. The jury did not err in apportioning Raftery with seventy per cent of the fault for plaintiff's accident.
The facts also support a finding that plaintiff was also partially at fault. There was sufficient evidence for the jury to find the plaintiff inattentive in a situation where she knew that a danger, however slight, existed. However, plaintiff's negligence could cause only injury to herself. The jury did not commit error in finding plaintiff thirty percent at fault.
The defendant, Raftery Maintenance Services, further argued on appeal, that the damage award received by plaintiff was excessive. In connection with this argument, the defendant assigned the following specifications of error:
(1) The court erred in allowing the introduction of uncorroborated, double hearsay testimony of plaintiff's medical condition;
(2) The judge failed to instruct the jury on the presumption that arises as a result of failing to call witnesses with no explanation;
(3) The jury erred in finding that plaintiff sustained a head injury;
(4) The judge erred in allowing a neurosurgeon to testify with respect to the results of another doctor's psychological evaluation and plaintiff's mental condition;
(5) The court erred in failing to instruct the jury on the presumption that arises in failing to call a treating psychologist;
(6) The jury erred in awarding any amount for past or future wage loss; and
(7) The jury erred in awarding $500,000.00 in damages.
Plaintiff has alleged that she had suffered from epileptic seizures as a result of the accident. Yet at trial, the plaintiff did not call as witnesses her husband and daughter. Both had been in the plaintiff's presence during her seizures. Further, Dr. Palmer, plaintiff's treating neurologist, testified at trial that plaintiff at first was not aware she was having seizures until informed by her husband. Plaintiff related to Dr. Palmer what her husband told her about what would occur during the seizure. The trial court allowed Dr. Palmer to testify to this information as part of plaintiff's medical history. The defendant objected to this testimony as double hearsay. While the trial court may have committed error in allowing such testimony, such error is not reversible. The trial court further did not commit reversible error in refusing to charge the jury on the plaintiff's failure to call her husband and daughter as witnesses. There was more than sufficient evidence for the jury to find that the plaintiff was indeed suffering from epileptic seizures.
Dr. Palmer testified that plaintiff had told her that she had a seizure while driving, causing an automobile accident. As a result, Dr. Palmer stated that she ordered the plaintiff not to drive. Further, the doctor testified as plaintiff continued to have seizures, the plaintiff became aware of warning signs prior to the onset of a seizure, and could relate the different incidents of seizures to Dr. Palmer.
Dr. Palmer then testified that it was her medical opinion that the plaintiff suffered *1365 from a condition known as a partial complex seizure disorder, and that this condition is a result of the elevator accident. It is interesting to note that defendant's medical expert, Dr. Susan Boston, corroborated Dr. Palmer's diagnosis.
The defendant, Raftery, also argued that the jury was clearly wrong in finding that the plaintiff sustained an injury to the head. There is conflicting testimony as to whether plaintiff actually sustained a blow to the head in the accident. Defendant relies upon the testimony of Ms. Dawn Hirstius who stated that she did not see Ms. Rosell hit her head on the rear wall. Further, Ms. Hirstius testified that as she was in back of the plaintiff as they exited the elevator, there is no way that plaintiff could have struck her head against the rear wall.
However, plaintiff testified that she was the last person exiting the elevator, and that she did strike her head against the rear wall. Further, Dr. Shackleton, the physician who treated Ms. Rosell in the Mercy Hospital emergency room, testified that the plaintiff sustained a contusion of the right face. Dr. Palmer also testified that she believed that the plaintiff sustained a concussion as result of the blow to the head.
When there is evidence before the trier of fact which upon its reasonable evaluation of credibility furnishes a reasonable factual basis for the trial court's finding, on review, the appellate court should not disturb this factual finding in the absence of manifest error. Canter v. Koehring Co., 283 So.2d 716 (La.1973). We find that the jury did not commit manifest error in finding that the plaintiff sustained an injury to the head.
Raftery contends that the trial judge erred in allowing Dr. Correa, plaintiff's treating neurosurgeon, to testify as to the contents of a report of Dr. Phillip Griffin, a clinical psychologist. The defendant further argues that the trial judge erred in refusing to charge the jury on the plaintiff's failure to call Dr. Griffin as one of her treating physicians.
The record reveals that the plaintiff saw Dr. Griffin only once, on the recommendation of Dr. Correa.
Dr. Correa first saw Ms. Rosell on February 29, 1984. Dr. Correa's first impression was that the plaintiff was suffering from cervical sprain and myofacial pain syndrome. On her next visit to Dr. Correa, the plaintiff complained of twitching of the eyes, and numbness in both hands. Further, Ms. Rosell was hyperventilating throughout the exam, and appeared very upset. Because of her apparent emotional distress and the added difficulty it caused in the plaintiff's treatment, Dr. Correa referred Ms. Rosell to Dr. Griffin.
Prior to Ms. Rosell's next visit on May 29, 1984, she saw Dr. Griffin who then sent a copy of his report to Dr. Correa. At that next visit, Dr. Correa testified that he told the plaintiff that Dr. Griffin's report showed evidence of a neurotic profile with depression. Dr. Correa then went on to state that such a condition is not an unusual reaction to pain syndrome and that it is very common for people to be depressed at the same time they have a medical problem.
We do not find the inclusion of such testimony to be reversible error. Dr. Correa was simply testifying to the treatment and recommendations given to Ms. Rosell. Dr. Correa's statements show that he was relying upon Dr. Griffin's report in his treatment and diagnosis of the plaintiff's complaints. Thus, it was not error to allow Dr. Correa to testify as to the contents of Dr. Griffin's report.
Further, we do not find that the trial judge committed error in denying defendant's requested jury charge concerning the negative presumption which exists when a plaintiff fails to call a treating physician as a witness. We do not believe that Dr. Griffin could be considered as one of plaintiff's treating physicians. Ms. Rosell was only seen once by Dr. Griffin, and *1366 only upon the recommendation of Dr. Correa. Further, the examination performed by Dr. Griffin could be considered as an extenuation of plaintiff's treatment with Dr. Correa.
Simply because a plaintiff consults another physician on the recommendation of his treating physician, does not automatically make the physician consulted one of the plaintiff's treating physicians so as to raise the negative presumption when the consulted physician is not called as a witness.
Therefore, the refusal by the trial court to give a charge to the jury relating to the failure to call a treating physician was correct.
Defendant's last two assignments of error concern the amount of damages awarded to plaintiff. Raftery argues that the jury erred in granting plaintiff damages for past and future wage loss. There is no merit to defendant's argument. The jury granted plaintiff $500,000.00 in "general damages."
There is nothing to indicate in the jury interrogatories that damages for past and future wage loss were included in the general damage award. The jury interrogatories did not ask the jury to specifically delineate the particular types of damages for which plaintiff was to be compensated. Thus, we are unable to say that the jury did award plaintiff damage for past and future lost wages.
Further, we find that the jury did not err in awarding plaintiff $500,000.00 in general damages. Before an appellate court will disturb an award made by the trial court, the record must clearly reveal that the trier of fact abused its discretion in making its award. Sentry Insurance v. Marks, 398 So.2d 24 (La.App. 4th Cir.1981).
Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive.
* * * * * *
Thus, the initial inquiry must always be directed at whether the trial court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's `much discretion', La.Civ.C. art 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that award may, on appellate review, for articulated reason be considered either excessive, Carollo v. Wilson, 353 So.2d 249 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977), or insufficient, Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). Only after such determinations of abuse has been reached, is a resort to prior awards appropriate under Coco [v. Winston, Industries, Inc., 341 So.2d 332 (La.1976) ] for purposes of then determining what would be an appropriate award for the present case.
In the initial determination of excessiveness or insufficiency, an examination of prior awards has a limited functionif indeed the facts and circumstances of the prior awards are closely similar to the present. The prior awards may serve as an aid in this determination only where, on an articulated basis, the present award is shown to greatly disproportionate to past awards (not selected past awards, but the mass of them for (truly) `similar' injuries, see Coco at 341 So.2d 334.
However, absent an initial determination that the trial court's very great discretion in the award of general damages has been abused under the facts of this case, the reviewing court should not disturb the trier's award. Wilson v. Magee, 367 So.2d 314 (La.1979).

Reck v. Stevens, 373 So.2d 498, at 501 (La.1979).
After a review of the trial record, we must conclude that the trier of fact did not *1367 abuse its discretion in awarding plaintiff $500,000.00 in general damages.
Immediately after the accident, Ms. Rosell received treatment at the Mercy Hospital emergency room. Thereafter, she was referred to Dr. Shackleton, an orthopedist, whom she saw on January 13, 1984. She presented to Dr. Shackleton with complaints of pain above the right eye, in the neck and right shoulder, and numbness in the right side of her face. X-rays taken revealed some aggravation of the C5-6 area of the spine. Dr. Shackleton diagnosed plaintiff as having suffered strain of the spine and a contusion to the right face and shoulder.
Dr. Amilcar Correa testified that he treated the plaintiff from February 1984 to June 1984. When the plaintiff first saw Dr. Correa, she complained of headaches, right-sided neck pain which radiated to the right shoulder, and thoraic pain centered in the left shoulder. The plaintiff was placed in physical therapy, which included ultrasound, electrical stimulation of the muscles, sinewave, biofeedback treatment, and moist heat application. Dr. Correa's original diagnosis was acute cervical sprain and myofacial pain syndrome.
On plaintiff's next visit, April 17, 1984, she complained of twitching of the eyes and numbness in both hands. Dr. Correa also noted that the plaintiff was hyperventilating during this examination. It was on this occasion that Dr. Correa suggested that Ms. Rosell see Dr. Phillip Griffin. Dr. Correa placed the plaintiff on sedative and anti-depressant medication.
The plaintiff was discharged by Dr. Correa on June 4, 1984, on an "as needed" basis.
Because she was continuing to suffer from head and neck pain, plaintiff sought the assistance of Dr. Maria Palmer, a neurologist. Dr. Palmer first treated the plaintiff on July 12, 1984. Ms. Rosell presented to Dr. Palmer with complaints of pain in the right side of the neck with radiation into the right shoulder and arm, ear pain, and headaches. Dr. Palmer's original diagnosis was that of cervical sprain.
However, on the November 28, 1984, visit, plaintiff complained of having seizures at nights. During the seizures, the plaintiff would open and close her fingers and smack her lips. Dr. Palmer indicated that such seizures are suggestive of a partial complex seizure disorder. The plaintiff was given an anti-convulsive medication.
On plaintiff's next visit, May 21, 1985, Ms. Rosell told Dr. Palmer that she had had a seizure while driving her automobile. Dr. Palmer, at that time, requested that the plaintiff no longer operate a motor vehicle. The plaintiff further stated that the seizures were different; the seizures would occur during the day and were preceded by a bad taste in the mouth and headaches. Dr. Palmer testified that plaintiff's statement about the bad taste in her mouth reflects that the seizures were coming from the temporal lobe of the brain, confirming the diagnosis of partial complex seizure disorder.
The plaintiff is still under Dr. Palmer's care and continues to have two to three seizures a week. Dr. Palmer indicated at trial that the plaintiff will need to remain under the care of a neurologist and continue with the anti-convulsion medication. Dr. Palmer also stated that it is difficult to control partial complex seizures, and that thirty-five to forty percent of patients with the disorder never obtain complete control of the seizures even with medication. In fact, the partial complex seizure disorder is most likely of a permanent nature. Dr. Palmer stated that it is her medical opinion that the plaintiff's seizures are of a permanent nature.
Dr. Palmer further testified that she still recommends that the plaintiff should not operate a motor vehicle. In regards to employment for the plaintiff, Dr. Palmer has stated plaintiff could work so long as the employer will accept the possibility that plaintiff may have a seizure while at work. The doctor also indicated that the plaintiff *1368 would have to rest after a seizure, so the employer would have to be willing to allow the plaintiff to sleep.
Dr. Palmer specifically stated that she found plaintiff's seizures to be a result of the elevator accident on January 12, 1984.
As of the date of the trial, June 1, 1987, the plaintiff has suffered with cervical sprain and headaches for approximately three and a half years. In addition, as a result of the accident, she has continually suffered from seizures since November 1984. Dr. Palmer has testified that the plaintiff will more likely than not continue to have seizures for the rest of her life. She will need to continue on medication, and under the care of a neurologist for the rest of her life.
Plaintiff was thirty nine years old at the time of the accident. She now will spend the rest of her life suffering from these seizures, not knowing when they will occur, or where she will be when they do occur. As a result of the seizures, the plaintiff must limit her outside activities as she is now dependent upon others for transportation.
In light of the circumstances of the plaintiff's injuries and the substantial change in her life-style as a result of these injuries, we do not find that the jury abused its discretion in awarding general damages in the amount of $500,000.00.
Accordingly, the judgment of the trial court is affirmed. Costs to be borne by defendant/appellant, Raftery Maintenance Services.
AFFIRMED.
ARMSTRONG, J., concurs.
LOBRANO, J., concurs with written reasons.
LOBRANO, Judge, concurring.
On remand to this court, the Supreme Court entered a decree stating "[t]he judgment of the Court of Appeal is reversed and final judgment is entered in favor of plaintiff on the issue of liability." In its reasons the Supreme Court noted that this court's "failure to defer to the jury's findings is difficult to fathom."
Based on my appreciation of the Supreme Court's decision, I see no reason for this court to discuss the issue of liability and/or apportionment of fault. In my opinion, those issues have already been determined.
I do, however, concur in the result reached by the majority.
NOTES
[1] Rosell v. ESCO, 539 So.2d 937 (La.App. 4th Cir.1989).