592 So.2d 471 (1991)
Milton E. SHEFFIELD and Betty H. Sheffield, Plaintiffs-Appellants,
Aetna Casualty & Surety Company, Intervenor-Appellant,
v.
UNION TEXAS PETROLEUM CORPORATION; Universal Products, Inc.; Thunderbay Contractors, Inc.; Prime Manpower, Inc.; Weldon Miller Contractors, Inc.; and Automation USA, Inc., Defendants-Appellees.
No. 90-624.
Court of Appeal of Louisiana, Third Circuit.
December 18, 1991.
*472 Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Joseph L. Lemoine, Jr., John A. Bernard, Lafayette, for plaintiff-appellant.
Voorhies & Labbe, James P. Lambert, Lafayette, for Prime Manpower-Audubon Ins.
Liskow & Lewis, S. Gene Fendler, New Orleans, for Union Tex. Petroleum.
Broussard & David, Hal J. Broussard, Lafayette, for Automation USA.
Michael S. O'Brien, Judith Z. Gardner, Lafayette, for Aetna.
Preis, Kraft & Daigle, Susan A. Daigle, Charles Mouton, Lafayette, for Miller Contractors.
Roy, Carmouche, Bivins, Judice, Henke & Breaud, Philip E. Roberts, Lafayette, for Thunderbay.
Gregg Spyridon, New Orleans, for defendant-appellee.
Before DOMENGEAUX, C.J., and GUIDRY and KING, JJ.
KING, Judge.
This appeal presents for consideration the correctness of the actions of the court and jury in rejecting plaintiffs' claims and the action of the trial court in assessing court costs.
This suit arises from an accident which occurred on a two-story metal platform which was located on a barge while it was being refurbished for use in offshore oil production. This appeal comes before this court, after a trial on the merits, as a result of a judgment of the trial court granting directed verdicts in favor of some defendants and a jury verdict finding another defendant not liable.
The following are the principal parties in this matter:
A. Plaintiff, Milton Sheffield (hereinafter the plaintiff), who was an employee of Weldon Miller Contractors and who was *473 employed as a welder on the two-story metal platform (hereinafter the platform).
B. Defendant, Weldon Miller Contractors, Inc. (hereinafter Miller), was the lessee of the barge on which the platform was located during the refurbishing operation (hereinafter the job) on the platform. Miller was also the contractor for the job at the time of the accident. Don Smith (hereinafter Smith), an employee of Miller, was supervisor of the job.
C. Defendant, Union Texas Petroleum Corporation (hereinafter Union Texas), owner of the platform that was destined to become an offshore oil and gas production platform. Dirk Daigle (hereinafter Daigle), an employee of Union Texas, was coordinating efforts on the job between Union Texas and Automation.
D. Defendant, Automation USA, Inc. (hereinafter Automation), was the company hired by Union Texas to install a safety system on the platform during the job. Ivan Jumonville (hereinafter Jumonville) and Ronald Bouvillion (hereinafter Bouvillion) were employees of Automation.
E. Defendant, Universal Products, Inc. (hereinafter Universal), was hired by Union Texas to lay out piping and production equipment on the job. Monty Richard (hereinafter Richard), its employee, was to oversee the job.
F. Defendant, Thunderbay Contractors, Inc. (hereinafter Thunderbay), furnished construction crews of painters and sandblasters for the job.
G. Defendant, Prime Manpower, Inc. (hereinafter Prime Manpower), furnished welder's helpers for the job on the day of the accident.
H. Intervenor, Aetna Casualty & Surety Company, was the worker's compensation insurer of Miller, and intervened in this suit seeking reimbursement of worker's compensation benefits paid to plaintiff.
After completion of the jury trial, a formal written judgment was signed on May 1, 1990. From this adverse judgment, plaintiff and intervenor timely appealed.
After the judgment was signed, intervenor filed a Motion To Amend Judgment seeking relief from being cast for one-half of the court costs in this matter. This motion was denied and a judgment denying the motion was signed on June 27, 1990. Intervenor timely appealed this judgment. This appeal was consolidated on appeal with this matter and, since both cases involve the same litigation in the trial court and involve substantially the same issues and applicable law, our opinion herein will be applicable but we will issue a separate judgment in the appeal entitled Sheffield v. Union Texas Petroleum Corporation, 592 So.2d 477 (La.App. 3 Cir.1991).
We affirm.

FACTS
On July 5, 1984, plaintiff was injured while employed as a welder for Miller. Miller was under contract with Union Texas to provide labor and some materials for the refurbishment of a two-story metal platform which was destined to be used in offshore oil and gas production. This part of the job was to be Phase II of the job. Earlier, Miller had conducted and successfully completed Phase I of the job which entailed acquiring the platform, loading it onto Miller's barge, transporting the barge to Miller's yard, removing all the old equipment from the platform, sandblasting and painting the platform, and installing handrails.
Phase II of the job was installation of production and safety equipment on the platform and required Union Texas to also employ the services of Universal for blueprints and pipe work, and to employ Automation to install a safety shut down system. Since Automation did not have its own welders, it borrowed a welder, Mr. Jim Lewis from Miller to assist with the installation of angle iron to be used as brackets on the platform.
The installation of the safety system required the attachment of pieces of angle iron, approximately 30 inches long and weighing approximately 30 pounds (hereinafter the angle iron) to the underside of the *474 second floor of the platform, approximately 40 feet above the deck of the barge. These pieces of angle iron were to serve as "brackets" to which other equipment would be attached. The pieces of angle iron were first attached by only "tack welding" to the underside of the top deck with the intention of firmly welding them in place.
At the time the pieces of angle iron were being tack welded, other work on the platform and barge was being done simultaneously. Plaintiff was welding on the barge deck some 35 to 40 feet below the deck where the pieces of angle iron were being attached but was not working directly under the area where the pieces of angle iron were being attached. Before the pieces of angle iron could be firmly and permanently welded, one of them became loose and fell from above, bounced off a cylindrical tank on the first deck of the platform, fell further, and then struck plaintiff's back and head. Plaintiff sustained injuries from this accident. He has undergone two surgeries on his back and has suffered back pain, headaches and personality dysfunction as well as a host of other physical complaints.
Plaintiff and his wife, Betty H. Sheffield, filed suit seeking recovery of the damages they sustained as the result of the accident. Made original defendants and later third party defendants, defendants-in-reconvention, and defendants in cross-claims were Miller, Union Texas, Automation, Universal, Thunderbay, and Prime Manpower. Aetna intervened as the worker's compensation insurer of Miller.
The trial court granted pre-trial Motions For Summary Judgment for Thunderbay and Miller and dismissed them from the suit. The trial court, at the completion of plaintiffs' case, also granted directed verdicts for Union Texas, Prime Manpower, and Universal, and also dismissed them from the suit. The trial court denied a directed verdict as to Automation at the close of plaintiffs' case. The issue of whether Automation was guilty of negligence, which was a proximate cause of plaintiff's accident, was submitted to the jury. The jury returned a verdict in favor of Automation. Plaintiff and intervenor timely appealed the trial judge's grant of motions for a directed verdict and the jury finding no negligence.

ASSIGNMENT OF ERROR NUMBER 1
In this assignment of error, appellants contend that the trial judge erred when he granted a Motion For Directed Verdict dismissing Union Texas and Universal at the close of plaintiffs' case. Appellants do not dispute the correctness of the trial judge's granting of the Motion For Directed Verdict in favor of Prime Manpower.
The standard that is applied when granting a directed verdict has been adopted in Louisiana from the Federal Courts. This standard, as set forth in Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir.1969), is that:
"On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidencenot just that evidence which supports the non-mover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury." Boeing Co. v. Shipman, 411 F.2d 365, at page 374 (5th Cir.1969).
Also, as was noted in Purvis v. American Motor Corp., 538 So.2d 1015 (La.App. 1 Cir.1988), writ den., 541 So.2d 900 (La. 1989):
"A trial judge has much discretion in determining whether or not to grant a motion for a directed verdict. A motion for directed verdict is appropriately granted in a jury trial when, after considering *475 all evidentiary inferences in the light most favorable to the movant's opponent, it is clear that the facts and inferences are so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. Lincecum v. Missouri Pacific Railroad Company, 452 So.2d 1182 (La. App. 1st Cir.), writ denied, 458 So.2d 476 (La.1984)." Purvis v. American Motor Corp., 538 So.2d 1015, at page 1019 (La. App. 1 Cir.1988), writ den., 541 So.2d 900 (La.1989).
In this case, the trial court concluded that the plaintiffs failed to prove their case. The trial court found that there was not enough evidence, even when considered in the light most favorable to plaintiffs, and that it was clear that the facts and inferences were so overwhelming in favor of Union Texas and Universal that reasonable men could not arrive at a contrary verdict regarding the lack of negligence of both Union Texas and Universal. For this reason, the trial court directed verdicts for Union Texas and Universal and did not submit the issue of their negligence to the jury. After a thorough review of the evidence in the record, we agree with the trial court and find this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 2
In this assignment of error, appellants contend the trial judge committed reversible error in excluding portions of Ivan Jumonville's pre-trial deposition testimony.
Appellants contend that Mr. Jumonville's deposition testimony differed from his trial testimony and, had the trial judge allowed the deposition testimony to be read to the jury, Mr. Jumonville's entire testimony would have appeared less credible.
Under La.C.C.P. Art. 1450, deposition testimony is admissible to impeach the deponent's credibility. However, in Streeter v. Sears, Roebuck & Company, Inc., 533 So.2d 54 (La.App. 3 Cir.1988), writ den., 536 So.2d 1255 (La.1989), the court adhered to the rationale set forth in Harrison v. State, Dept. of Highways, 375 So.2d 169 (La.App. 2 Cir.1979) which found that it was not an abuse of discretion to refuse to admit into evidence a deposition that was merely repetitious of matters contained in the record and served no other purpose.
In this case, after reviewing the court room testimony and deposition testimony of Mr. Jumonville, we find that the trial judge did not abuse his discretion in refusing to admit Jumonville's deposition testimony. Mr. Jumonville's testimony at trial was not inconsistent with his deposition testimony in that he never denied that he knew the angle iron was loose. Rather, his statements in question were directed more to the fact that he did not feel qualified to make a decision as to whether the angle iron was tack welded sufficiently to hold and, therefore, he felt that he needed the opinion of a welder as to the sufficiency of the tack weld.
For these reasons, we find this assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER 3
Appellants claim the jury committed reversible error in finding Automation free from fault.
Appellants allege that there was enough evidence presented from which the jury should have found Automation negligent and that the jury verdict finding Automation free from fault was clearly contrary to the totality of the evidence. Appellants cite Hall v. Great Atlantic and Pacific Tea Co., Inc., 297 So.2d 527 (La.App. 4 Cir.1974), writ den., 300 So.2d 842 (La. 1974), in which the court recognized that the manifest error rule does not apply when there is a question of the sufficiency and preponderance of the evidence rather than a question of resolving conflicting testimony or credibility of witnesses. Appellants suggest that this is the standard of review that should be applied in this appeal rather than the manifest error rule.
The record reflects that this trial lasted over three weeks. The voluminous record also reflects that there was a tremendous amount of pre-trial discovery. Numerous people were deposed in an effort to resolve the issue of liability. Pertinent testimony *476 was offered at trial for the jury to consider in order to make a determination of the negligence of Automation. The Louisiana Supreme Court has stated quite clearly and succinctly in Rosell v. ESCO, 549 So.2d 840 (La.1989), on remand, 558 So.2d 1360 (La. App. 4 Cir.1990), writ den., 561 So.2d 105 (La.1990), that:
"It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of `manifest error' or unless it is `clearly wrong,' and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." Rosell v. ESCO, 549 So.2d 840, at page 844 (La.1989), on remand, 558 So.2d 1360 (La.App. 4 Cir. 1990), writ den., 561 So.2d 105 (La.1990).
As appears from the record, there were points of conflict in the testimony. One such conflict centered around whether or not Ivan Jumonville told the welder, Jim Lewis, about the loose angle iron. Another was regarding whether there were riggers/roustabouts moving scaffolding near the loose angle iron at the time plaintiff was struck by the loose angle iron. Also, there was a conflict as to whether the loose angle iron found by Mr. Jumonville was the same loose angle iron that struck plaintiff or whether it was another angle iron that was knocked loose and struck plaintiff.
The record is replete with instances of conflict in the testimony. Therefore, it was not just a matter of the sufficiency or preponderance of the evidence, but also the conflict in testimony and reasonable evaluations of credibility that needed to be determined.
The court also noted in Rosell, supra, that:
"When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said...." Rosell v. ESCO, 549 So.2d 840, at page 844 (La.1989), on remand 558 So.2d 1360 (La.App. 4 Cir.1990), writ den., 561 So.2d 105 (La.1990).
As previously stated, the jury had the benefit of listening to the three weeks of testimony regarding just plaintiffs' case. The jury was also clearly instructed by the trial judge on the applicable law of negligence and what standard of conduct Automation should be held to and how Automation's conduct must be the cause-in-fact of plaintiff's actual injuries. After considering all of this, the jury returned a verdict in favor of Automation.
We therefore conclude, after applying the standards set forth in Rosell, supra, and also considering this lengthy record viewed in its entirety, that the jury did not commit manifest error in finding Automation free from fault. There was sufficient testimony presented from which reasonable inferences could be drawn to support the result reached by the jury.

ASSIGNMENT OF ERROR NUMBER 4
The issue presented by this assignment of error is whether the trial court erred when it taxed intervenor, Aetna Casualty & Surety Company, with one-half of the court costs.
Aetna contends that the trial court abused its discretion in casting it with onehalf of the court costs. Aetna argues that because it had no control over decisions of plaintiffs to accept or reject offers to settle and to proceed to trial that assessing it with one-half of the court costs was inequitable and against all notions of fair play.
La.C.C.P. Art. 1920 provides:
"Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable."
*477 Under Louisiana jurisprudence, it is a well settled practice that the trial court has broad discretion in determining and allocating court costs. Fanara v. Big Star of Many, Inc., 558 So.2d 316 (La.App. 3 Cir. 1990); Foreman v. Montgomery, 517 So.2d 1034 (La.App. 3 Cir.1987); American Deposit Ins. Co. v. Walker, 450 So.2d 33 (La.App. 3 Cir.1984).
Assessment of costs by the trial court will only be disturbed upon a showing of abuse of discretion. Fanara, supra, at page 319. Aetna, having intervened in the suit, would have shared in the benefits if plaintiff had been successful. On the other hand, it is certainly not inequitable for Aetna to share in the costs which have resulted in an unfavorable outcome to plaintiffs. Under the circumstances, we do not find that the trial court abused its discretion in assessing Aetna with one-half of the court costs. This assignment of error lacks merit.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed one-half to plaintiffs and one-half to intervenor, Aetna Casualty & Surety Company.
AFFIRMED.