DOUCET, Judge.
This appeal arises from a jury verdict in favor of plaintiff, Kerry D. Hardy (Hardy), for injuries she sustained while participating as a jockey when her horse lunged out of the starting gates seconds before the race began at the Delta Downs Race Track.
Hardy brought this action seeking to recover damages for injuries sustained when she fell from her horse after it surged prematurely through the starting gates. Named as defendants were Delta Downs, Inc. (Delta), and Clay Puett’s True Center Gate Company, Inc. (Puett), who manufactured the gates used at Delta Downs. After answers to the petition were filed, Puett moved for summary judgment and the district court granted the motion and dismissed the claim against it. After trial on the merits, a jury verdict was entered against Delta awarding damages of $110,-500.00 to plaintiff Kerry D. Hardy. It is from this verdict that defendant, Delta, appeals.
LIABILITY
The defendant asserts that the jury erred in holding that Hardy carried her burden of proof of Delta’s negligence or strict liability and in failing to find that Hardy was totally or comparatively at fault. These are issues of fact. The applicable standard of review is stated in the case of Trahan v. *366 State, Dept. of Transp. & Dev., 536 So.2d 1269 (La.App. 3rd Cir.1988), writ denied, 541 So.2d 854 (La.1989).
The finding of liability by the trial court is a finding of fact which a reviewing court may not disturb unless, (a) the record evidence does not furnish a sufficient basis for that finding, or (b) the finding is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Co., 283 So.2d 716 (La.1973).
Trahan, supra, at p. 1271.
Defendant, Delta, argues that it did not breach any duty to protect Hardy from the injury or harm of which she complained, nor did Delta possess or control an unreasonably dangerous instrumentality in the manner normally used.
As stated in Trahan, supra, at p. 1271-1272:
It is well established that the “duty-risk” analysis is the process employed in Louisiana for determining whether liability exists under the facts of a given case. The following questions are considered in this analysis:
(1) Was the conduct in question a cause-in-fact of the resulting harm?
(2) Was there a duty owned by the defendant to protect the plaintiff from this type of harm arising in this manner?
(3) Did the defendant violate the duty owed?
(Citations omitted)
Applying the duty-risk analysis to the facts of the case herein requires a determination of whether or not the plaintiff proved that the failure to close the starting gates or the inaction of the assistant starter was a cause-in-fact of the accident.
An act of [sic] omission is considered to be a cause-in-fact of harm to another if it was a “substantial factor” in bringing about the accident.
* * * * * *
As noted in the restatement, factors which may be considered in determining whether the actor’s negligence is a substantial factor include “whether the actor’s conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm ...”
Trahan, supra, at page 1272. Testimony presented at trial established that the assistant starter’s inaction was a substantial factor in bringing about the accident. Richard Huval, the starter for Delta for 15 seasons, affirmed that the purpose of the assistant starter’s presence inside the starting gates is to maintain control of the horses. Huval further admitted that an assistant starter would want to take extra precaution with a young, juvenile horse such as Hardy’s. Richard Breaux (Breaux), assistant starter for Delta, was assigned to Hardy’s horse. Breaux testified that after the horse was loaded into the gates, he pulled the horse up a little bit, then eased up rather than holding a bind on the horse. Breaux added that about three seconds later, the horse went back, hit the tailgate again, and immediately lunged and hit the gates. Breaux stated that he had the reins until the horse burst through the gates, but that there was nothing he could do after the reins had “come off” his hands. Breaux described the procedure for preventing a horse from breaking through the gates. He explained that if watched closely, it can be determined when the horse is going to go up. Breaux stated that the assistant starter must jerk the horse’s head into his lap, which throws the horse off balance, preventing the horse from taking any action. Breaux added that the necessary warning creating the opportunity to apply this procedure did not occur in this case.
Conflicting testimony was given by Hardy. Hardy stated that once loaded into the gates, the horse leaned into the gates. Hardy testified that at that point, she asked the assistant starter to head her horse and make the horse stand properly, but received no response to her request. She added that Breaux was turned to his left with his back to her and had both hands occupied with the horse in the adjacent gate. Hardy said that she requested Breaux’s assistance again, and that again Breaux did not answer her. It was at that *367 time that the horse suddenly reared up very high on her hind legs striking the front of the gates resulting in the gates opening. Hardy added that up to that point, she had not received any assistance or help from the assistant. According to Hardy, Breaux never touched her horse after she was in the gates. Richard Huval, head starter for Delta Downs, supervises the assistant starters. He watches the assistants in the starting gate immediately prior to the beginning of each race to determine when the horses are ready to start. He stated that he saw Breaux help Hardy. However, his testimony indicated that when he sees a horse act up he marks his program. Immediately before the accident, he marked his program that another horse had been acting up in the parade. He did not make any notation with regard to Hardy’s horse until after the race was over.
As previously stated, a court of appeal may not set aside a finding of liability unless there is no sufficient basis for that finding, or the finding is clearly wrong. As stated in Rosell v. ESCO, 549 So.2d 840 (La.1989), on remand, 558 So.2d 1360 (La.App. 4th Cir.1990), writ denied, 561 So.2d 105 (La.1990), where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed.
After careful review of the record in its entirety, we conclude that although Hardy and Breaux presented two different views of the evidence, the jury’s choice between them was not clearly wrong, and the record reflects sufficient facts to support its conclusion based on the jury’s reasonable evaluation of credibility. The jury could reasonably believe that Breaux’s inaction breached a duty to Hardy and that it was the cause-in-fact of the accident.
Furthermore, the evidence of record is sufficient to support a determination by the jury that Hardy’s injuries were not wholly or partially the result of her own negligence.
Since there was sufficient evidence to support a finding of liability under a negligence theory, there is no need to review the strict liability theory asserted by Hardy in regard to the custody of the gates and the manner in which it was used.
QUANTUM OF DAMAGES
The jury awarded the plaintiff damages in the amount of $110,500.00. The defendant argues that this is excessive.
Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive.
With regard to appellate review of the much discretion of the trier of fact in the award of general damages, La.C.Civ.P. art. 1934(3), we stated (after exhaustive review of the facts, and reversing the appellate court for disturbing (on the basis of prior awards) the trier of fact’s award) in Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127, 132 (1967) (Italics ours):
“The law is plain and means what it says, and it is the duty of all appellate courts to follow it. Under this rule the amount of damages assessed by the judge or jury should not be disturbed unless the appellate court’s examination of the facts reveals a clear abuse of the discretion vested in the trial court....”
* Jjc * * * ⅜!
Thus, the initial inquiry must always be directed at whether the trier court’s award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact’s “much3 discretion,” La.Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, Carollo v. Wilson, 353 So.2d 249 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977), or insufficient, Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). Only after such de *368 termination of abuse has been reached, is a resort to prior awards appropriate under Coco [v. Winston Industries, Inc., 341 So.2d 332 La.1977) ] for purposes of then determining what would be an appropriate award for the present case.
In the initial determination of exces-siveness or insufficiency, an examination of prior awards has a limited function — if indeed the facts and circumstances of the prior awards are closely similar to the present. The prior awards may serve as an aid in this determination only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, but the mass of them) for (truly) “similar” injuries, see Coco at 341 So.2d 334.
However, absent an initial determination that the trial court’s very great discretion in the award of general damages has been abused under the facts of this case, the reviewing court should not disturb the trier’s award. Wilson v. Magee, 367 So.2d 314 (La.1979).
Reck v. Stevens, 373 So.2d 498 (La.1979).
After reviewing the evidence with regard to the damage sustained by the plaintiff, we find no error in the award of $110,500.00.
After the horse broke free of the gates, it ran down the track. The plaintiff fell from the horse, but her foot was caught in the stirrup. She was dragged about four or five strides before her foot came out of its boot, freeing her. The plaintiff was taken to the Orange Memorial Hospital in Orange County, Texas. There it was determined that she had a ruptured spleen, bruised kidneys, and fractures of the left transverse processes of the L1-L4 verta-brae. Internal bleeding caused a low blood count. She had lower left back pain and soreness in her spleen and kidney areas. Her spleen was broken in two with a blood clot around the break, and bleeding inside the blood clot. After three and one-half days she was transferred to St. Elizabeth Hospital in Beaumont, Texas. Dr. Douglas Horton, a general surgeon, removed her spleen. She was left with a scar which ran from her breast bone to her navel. Because of the surgery, she was not given a back brace and her fractured spine had to heal without this support.
Ms. Hardy recovered well from her surgery. Four months after the accident, she began riding again with the intention of resuming her career as a jockey. As she increased the amount of riding, she began to have pain in her lower left back and left leg. Her left leg would often go to sleep and become numb. As a result, she consulted Dr. Kenneth N. Adatto, an orthopedic surgeon, on December 18, 1987. His examination revealed tenderness on the lower left back, limited forward flexion, and spasm. He found “normal motor, sensation and reflexes.” He examined the X rays taken after the accident and took new ones. The new X ray films revealed that the fracture at L4 had healed, but the fractures at LI, 2, and 3 had not. Since they had failed to heal in six months, he felt that it was unlikely that they would heal spontaneously. He prescribed exercise, muscle relaxers, and anti-inflammatory drugs. He suggested that she undergo a CAT Scan, MRI and Thermogram. The results of these tests looked normal, except that the Thermogram revealed mild nerve root irritation. Dr. Adatto last saw her March 21, 1988. At that time, Hardy felt fairly well as long as she was not riding or lifting heavy objects and did not sit for long periods of time. He stated that the fractured spine had left Hardy with a 10-15% permanent anatomical disability which would prevent her from pursuing a career as a jockey. He testified that she could function normally as long as she did not overload her back, lift heavy objects, or sit for extended periods of time. Hardy also testified that she needs to limit her activities or the pain recurs. She is no longer able to ride, water ski, or snow ski. She incurred medical expenses of $10,577.65 as a result of the accident. Thus, the evidence indicates that Hardy sustained serious injuries which resulted in substantial pain and continuing disability, and necessitated a complete change in career and lifestyle. The jury’s award indicates its appreciation of the seriousness of the damage *369 incurred by Ms. Hardy. We cannot say that the jury abused its discretion in making this award.
IMPROPER COMMENTS
Further, the defendant argues that the trial judge erred in denying his motion; for a new trial based on improper comments allegedly made to the jury by counsel for the plaintiff during closing arguments.
The record on appeal does not contain a transcript of the closing arguments, the allegedly improper comments, or any contemporaneous objection made thereto. Rules 2-1.6 — 2-1.9 of The Uniform Rules of Louisiana Courts of Appeal designateá those portions which must be forwarded to the appellate court if no designation is made by the appellant. Closing arguments are not included in this list. It was the responsibility of the appellant to see that the court had before it the information necessary to rule on this assignment of error. In the absence of a transcript of the closing arguments, we have nothing before us to review. See Coody v. Richardson, 569 So.2d 1012 (La.App. 3rd Cir.1990), writ denied, 572 So.2d 90 (La.1991). Therefore, we cannot consider this assignment of error.
JURY INSTRUCTIONS
Defendant, Delta, asserts that the trial judge erred by charging the jury on strict custodial liability of the starting gates. In addition, Delta alleges that it was reversible error to charge the jury to evaluate Hardy’s conduct under a reasonably prudent person standard rather than a higher degree of care expected of a licensed professional.
The judge in a jury trial is not required to give the precise instructions submitted by either party, but must give instructions which properly reflect the law applicable in view of the facts present. The adequacy of jury instructions must be determined in light of the instructions as a whole. Laborde v. Velsicol Chemical Corp., 474 So.2d 1320 (La.App. 3d Cir.1985), writ denied, 480 So.2d 738 (La.1986).
Creel v. S.A. Tarver & Son Tractor Co., 537 So.2d 752 (La.App. 1st Cir.1988).
In this case, the trial judge did not err in giving a charge on strict liability. Our review of the evidence convinces us that there were sufficient facts present to support a charge on strict liability. Further, we find that the facts supported the charge given with regard to Hardy’s standard of care. No evidence was adduced with regard to any special care required of a jockey or the violation of such a standard.
Accordingly, the trial judge did not err in giving the jury instructions complained of.
CONCLUSION
For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs are assessed to the defendant.
AFFIRMED.