IrWALTZER, Judge.
Appellant R.C. Llewellyn appeals a September 30,1994 judgment against him and in favor of Billy Ray Eubanks in the sum of $355,811.00 with interest at the rate of 11.5% from September 27,1994.
This court has previously ruled in this matter in First City Bank v. 740 Esplanade Ave., 611 So.2d 715, 716-717 (La.App. 4 Cir.1992) writ denied 613 So.2d 979 (La.1993), (hereinafter “740-1”), wherein the court provided the following:
On July 14, 1983, B.R. Eubanks, Thomas T. Cloke, David S. Cressy, Albert J. Aueoin, Jr. and R.C. Llewellyn signed a partnership agreement creating “740 Esplanade Avenue, A Partnership in Com-mendam” (The Partnership). The agreement provided that Llewellyn would be a limited partner and the others general partners. Also on that date, Llewellyn signed a continuing guaranty, guaranteeing the negative cash flow of the partnership up to one hundred and fifty thousand ($150,000.00) dollars.
On July 15, 1983, the Partnership purchased the property located at 740 Esplanade Avenue in the City of New Orleans and executed a collateral mortgage and note for Two million ($2,000,000.00) dollars in favor of First City to secure First City’s loan to the Partnership. Subsequently, the collateral mortgage note was pledged by the Partnership to secure certain indebtedness in favor of First City represented by four (4) promissory hand notes in the amounts of one million, three hundred thousand ($1,300,000.00) dollars; seventy thousand ($70,000.00) dollars; one hundred and fifty thousand ($150,000.00) dollars and sixty-seven thousand ($67,-000.00) dollars.
The Partnership failed to make any payments on the notes and First City commenced executory process foreclosure proceedings on November 29,1984.
Subsequent to the foreclosure proceedings, Eubanks paid the remaining indebtedness to First City and was assigned their rights to a deficiency judgment. As a result Eubanks was substituted as plaintiff in these proceedings. On February 3, 1986, Eubanks filed ha Supplemental and Amending Petition for Deficiency Judgment naming the Partnership, Cloke and Cressy as defendants. On February 14, 1986, Eubanks filed a Second Supplemental and Amending Petition for Deficiency Judgment joining Llewellyn as a defendant. Eubanks’ basis for joining Llewellyn was Llewellyn’s continuing guaranty.
In response Llewellyn filed a Rule for Judgment on the Pleadings predicated upon the legal doctrine of confusion. The trial court granted Llewellyn’s rule and dismissed Eubanks’ claim against him ...
Eubanks argues that he is not the principal obligor on any of the Partnership’s obligations, that he did not execute the notes as maker and thus his payment did not extinguish the indebtedness by confusion. He argues that he is entitled to pursue Llewellyn’s guaranty. We agree. The Court in 740 I further stated:
Notes II and III were not signed by Eubanks in any capacity. Therefore, there can be no confusion and he certainly can pursue his claim against all the guarantors, including Llewellyn, subject to the limitations in the continuing guaranty. *1193 With respect to these two notes Eubanks is in the same position as a third party who purchased the notes from First City and then proceeded against the guarantors.
The record, however, is not clear as to Eubanks’ capacity with respect to Notes I and IV. Eubanks argues that if he signed as principal obligor there would have been no need to sign the reverse of the notes as guarantor. He asserts that his signature as guarantor proves he could not have been a maker. This, however, is not necessarily correct. Because the word “BY:” does not appear before his signature on the front of either note, we cannot say from the pleadings before us that Eubanks signed in a representative capacity for the partnership or an individual capacity. While it may be true that it is meaningless for a party who is a maker to also sign as a guarantor, that fact does not, in and of itself, prove that he is not a maker. (At 717).
740-1 was remanded to the trial court for a determination of Eubanks’ status with respect to Notes I and IV.
On remand, the trial court provided the following written reasons for judgment:
When the project went into default and the property foreclosed, Dr. Eubanks, because of another more significant pending loan application, was persuaded to buy the property and the notes. He now proceeds against Dr. Llewellyn in the shoes of the bank to enforce the guarantee by way of pursuing a deficiency judgment.
|8The Articles of Partnership required that three of the four general partners (excluding Aucoin) personally co-make the loan, if required by the Bank. The Bank did not so require. Instead it had the three sign separate continuing guarantees. The testimony was inconclusive on whether the notes were in fact eo-made by the partners. At the top of each note the maker is said to be the partnership. At the bottom is typed the name of the partnership followed by the signature of the three general partners. Notes II, III and IV are clearly signed by the partners in a representative capacity. Only Note I lacks the usual representative designation “by”. If the three signatures on Note I are deemed personal, then no one signed for the partnership itself in a representative capacity. Also, the printed words “maker” and “co-maker” appear after the signatures. That designation, I believe was inadvertent, and not dispositive. I conclude from the documentary evidence including the face of the notes, they were all signed in a representative capacity.
Dr. Llewellyn asserts that Aueoin’s failure to co-sign partnership checks was a breach of the side agreement, relieving him of his obligation under his limited guarantee. I disagree. There is no evidence that such failure caused any harm to defendant. Specifically, no one testified that Aucoin would have questioned any check had he been asked to co-sign. The “breach” even if imputed to plaintiff, is irrelevant.
Dr. Llewellyn guaranteed the loan of the bank up to $150,000.00 as limited by the partnership agreement. The partnership articles provide that he guarantee negative cash flow up to $6,000.00 in any month for a period of 24 months. There was in fact negative cash flow for each of 23 months representing an indebtedness of $138,-000.00. This was a capital investment obligation which he never fulfilled. This capital obligation was passed through to the bank in the form of Dr. Llewellyn’s separate and continuing guarantee for which defendant is liable.
I believe Dr. Llewellyn should only be charged with 10% of the court costs, sheriffs fees, and attorney fees incurred in the original proceeding.
Although the continuing guaranty makes no provisions for attorney fees for its enforcement, I believe Dr. Llewellyn in (sic) nevertheless responsible for the Draper fees. The continuing guarantee is an accessory obligation to the note. C.C. Art. 1913. It guarantees attorney fees incurred in collecting the note and this action is based on both instruments.
There will be judgment in the amount of $355,811.00.
(Emphasis added).
*1194 The trial court found that Eubanks was not a maker of Notes I and IV. The trial court further found that Eubanks was entitled to pursue the guaranty in the shoes of the Bank through subrogation as the purchaser of the notes when it stated, |4“(The guaranty) was a capital investment obligation which he never fulfilled. This capital obligation was passed through to the bank in the form of Dr. Llewellyn’s separate and continuing guaranty for which defendant is hable.”
On appeal, appellant raises the following specifications of error:
1. The trial court erred in finding that Eubanks was not a maker of note I.
2. The trial court erred in failing to grant Llewellyn a set-off.
3. The trial court erred as to Llewellyn’s responsibility for Notes II, III, and IV because the Partnership Agreement precluded such liability.
4. The trial court erred in its application of the suretyship articles.
5. The trial court erred in its calculation of damages.
Turning to the first specification of error, we note that whether Eubanks was a maker was a question of fact remanded to the trial court in 740-1. Accordingly, that finding of fact is reviewed under the manifest error rule of appellate review. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) on remand 370 So.2d 1262 (La.App. 3 Cir.1979) writ denied 374 So.2d 660 (La.1979); Rosell v. ESCO, 549 So.2d 840 (La.1989) on remand 558 So.2d 1360 (La.App. 4 Cir.1990) writ denied 561 So.2d 105 (La.1990); Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993) cert. denied — U.S. -, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
The trial court correctly found that Dr. Eubanks was not a maker on note I. In its text, Note I names the Partnership as the maker of the note. The trial judge noted during David Cress/s testimony that if the three people signing on the front of the note had signed in their individual capacity, then no one would have signed in a representative capacity on behalf of the partnership. Thus the statement at the top of the note that the maker was the Partnership would be Igincorrect or unsupported. Apparently the trial judge believed that it is more likely that the bank made an error in drafting the note by failing to include the word “by” than made an error in naming the wrong party as maker of the note. This conclusion is bolstered by testimony in the record that Dr. Eubanks was always to be a general partner in the partnership and individually a guarantor, but never a co-maker in his individual capacity. Accordingly, we cannot conclude that the trial court was manifestly erroneous in this factual determination, which is well supported by the record.
In his second specification of error, appellant argues that the trial court erred in failing to allow him a set-off.
Dr. Llewellyn is not entitled to a set-off under any provision of law. The trial court properly found that Dr. Eubanks did not at any time breach the partnership agreement or otherwise violate his fiduciary relationship to the partnership in any way. Accordingly, there is no basis for a set-off.
Appellant’s third specification of error is that the trial court erred as to Llewellyn’s responsibility for Notes II, III, and IV because the Partnership Agreement precluded such liability. Initially we note that this appeal does not include notes II and III, which were already resolved in 740-1.
The partnership agreement provided as follows:
Art. Ill Capital Contributions by Partners
PARTNER IN COMMENDAM:
R.C. LLEWELYN, M.D., a partner in commendam shall contribute TWENTY FIVE THOUSAND ($25,000) DOLLARS cash to the capital of the partnership and shall guarantee any negative cash flow of the partnership for a period of two years from the date of purchase of the property. Said negative cash flow not to exceed SIX THOUSAND ($6,000) DOLLARS in any month up to a limit of ONE HUNDRED FORTY FOUR THOUSAND ($144,000.00) DOLLARS. | (¡Negative cash flow shall be *1195 the amount the debt service on the loans on the said property exceeds all net operating income.[1]
Art. 1(4). Scope of Partners’ Authority
The rights, powers and duties of the General Partners shall be as more fully herein set forth, and the Partner in Com-mendam shall have no authority whatsoever to bind the Partnership or any other Partner. Any two of the General Partners are hereby empowered and authorized to sign on behalf of the General Partners any and all documents related to the business of the Partnership.
In addition to the partnership agreement provisions quoted above, the following agreement was confected the day after the above partnership agreement was signed:
AGREEMENT
An agreement by and between 740 Esplanade Avenue, a partnership in Com-mendam, represented herein by Thomas T. Cloke, David S. Cressy and Albert J. Au-eoin, Jr., General Partners, and R.C. Llewellyn, M.D., Partner in Commendam, agree as follows:
That all checks drawn on this partnership’s bank account shall require signatures of at least two of the General Partners, one of whom shall be Albert J. Aueoin, Jr.
That said Albert J. Aueoin, Jr. shall approve all loan take-downs, and all cash disbursements and shall report all said transactions to all partners on a quarterly basis.
Metairie, Louisiana this 13th day of July, 1988.
As to note IV, appellant is attempting to read the provisions of a separate and distinct side agreement, which was not part of the partnership agreement, not done in authentic act, not publicly recorded like the partnership agreement, and never seen by Dr. Eu-banks, as binding upon the bank’s subrogee. The language of the side agreement could have easily been included in the partnership agreement. Alternatively, the parties could have executed an authentic act of l7amendment of the partnership agreement which could have been recorded. We cannot allow unrecorded side agreements to which a bank’s subrogee was not a party and of which a bank’s subrogee had no knowledge to be binding upon a bank subrogee. In addition to the fact that Dr. Eubanks cannot be bound by an act to which he was not a party, of which he had no knowledge, and which was not publicly recorded, to hold otherwise would mean the end of the secondary market for resale of bank notes, as anyone could produce an unrecorded agreement from anywhere which would make the note uncollectible and invalid. As a practical matter, while the purpose of the side agreement was to protect Dr. Llewellyn by making his personal accountant, Mr. Aueoin, signatory, Mr. Au-coin admitted on the stand that he did not sign the checks, that even though he had actual knowledge that two other general partners were signing cheeks, he did not object and that he did not and would not have notified Dr. Llewellyn of any check signatures not done by him or any additional loans. We find that the trial court did not err.
Appellant argues that the trial court erred in its application of the suretyship articles. We disagree. Eubanks pursues this action as purchaser of the notes and thus subrogee of the bank. As discussed above, the trial court correctly found that the principal obligor on the notes was the Partnership and further correctly found that Dr. Eubanks was not the principal obligor of the notes, but was a general partner of the partnership and individually had executed a separate guaranty agreement in favor of the bank, making him a solidary guarantor. Civil Code Article 1756 provides:
An obligation is a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another called the obligee. Performance may consist of giving, doing, or not doing something.
*1196 IsUnder the notes the obligor (the Partnership) is bound to render a performance (payment according to the terms) in favor of the obligee (the Bank). Civil Code Article 1904 provides:
Confusion of the qualities of obligee and obligor in the person of the surety does not extinguish the obligation of the principal obligor.
Comment (b) under the Article states:
Under this Article, when the same person becomes obligee and surety the principal obligation is not extinguished by confusion. Nor is the principal obligation thus extinguished when the same person becomes surety and principal obligor.
See: Hilgenfeld v. Hilgenfeld, 180 So.2d 236 (La.App. 2nd Cir.1965); Whitney Nat. Bank v. BEN Development Co., 364 So.2d 1076 (La.App. 4th Cir.1978) Accordingly, this argument is without merit.
Lastly, appellant argues that the trial court erred in its calculation of damages. The amount of damages granted by the trial court was the number provided by Michael Powers, the only expert who testified as to calculation of damages. The damages awarded by the trial court break down as follows:
$138,000.00 Under Dr. Llewellyn’s Guaranty 2,862.00 10% of Sheriffs Fee
$140,862.00 Total Principal Balance
$140,862.00 Total Principal Balance 141,988.00 Interest 11.5% 12/20/85 — Present
$282,850.00 Total Due from Dr. Llewellyn
$282,850.00 Total Due from Dr. Llewellyn
4,089.00 10% of Foreclosure Attorneys Fees provided for in the notes
68,872.00 100% of Eubanks Attorneys Fees to collect the guaranty as per the guaranty language
$355,811.00 Total Due from Dr. Llewellyn to Dr. Eu-banks
li)We cannot conclude that the trial court clearly abused its discretion in the amount of damages awarded. Accordingly, this specification of error is without merit.
For the reasons discussed, the judgment of the district court is affirmed.

AFFIRMED.

. With reference to the definition of "negative cash flow” we note that no payments were ever made on any of the loans.